Isaac Schwab et al., Respondents, *v.* Union Line, Appellant.

### January 16, 1883.

1. Common Carriers.—A carrier who receives goods and begins the transit is, in the absence of a special contract, bound to deliver them within a reasonable time.

2. ——Practice.—Whether goods are delivered by a common carrier within a reasonable time is a question for the jury.

3. ——Evidence.—Proof of the usual course of delivery is ordinarily *prima facie* evidence of reasonable time.

4. ——Liable for Delays—Notice.—A carrier is liable for delays occasioned by obstructions of which it had notice and of which the shipper had not notice.

**5.** —— It is the duty of a carrier to notify its shippers of obstructions which will necessarily cause delay.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

PATTISON & CRANE, for the appellant: " In respect to the time of delivery the defendant was responsible only for due diligence, and was only bound to transport and deliver the goods in a reasonable time, and without unnecessary delay." — *Clark* v. *Railroad Co.*, 39 Mo. 190 (citing *Parsons* v. *Hardy*, 14 Wend. 215). This is in accordance with the current of authority. "As to the duty to carry within a reasonable time, the carrier's responsibility is only that of an ordinary bailee for hire." — Hutch. on Car., sect. 328. " The question is only one of reasonable diligence, and accident or misfortune will excuse him." — *Wibert* v. *Railroad Co.*, 12 N. Y. 251. Although such accident or misfortune is not inevitable, nor produced by the act of God or the public enemy. — Story on Bail. (9th ed.), sect. 545a; Hutch. on Car., sect. 330. " The amount of business ordinarily done by the road is the only proper measure of its obligation to furnish transportation. If by reason of a sudden and unusual demand for stock or produce in the market, or from any other cause, there should be an unexpected influx of business to the road, this obligation will be fully met by shipping such stock or produce in the order and priority of time in which it is offered." — *Ballentine* v. *Railroad Co.*, 40 Mo. 500 (citing *Galena, etc., R. Co.* v. *Rae*, 18 Ill. 488); to same effect, 2 Redf. on Rys. (5th ed.) 194, sect. 189.

HENRY W. BOND, for the respondents.

BAKEWELL, J., delivered the opinion of the court.

This was an action for damages alleged to have been occasioned by the breach of the duty of defendant as a common

carrier. It is claimed that there was unreasonable delay in the transportation of plaintiff's goods from New York to St. Louis, in consequence of which they depreciated in value. The verdict and judgment were for plaintiff.

There was evidence tending to show the following state of facts : —

Defendant is a through freight line, conveying goods between New York and St. Louis over connecting lines of railroad, of which the last, at the western end, is the Terre Haute and Indianapolis Railroad, extending from Indianapolis to East St. Louis. Defendant received the goods in question at New York, to be forwarded to St. Louis. This was on the 7th of October. The usual time of transit for such freight is from six to seven days ; the goods did not reach St. Louis until the 15th of November. There was evidence of the depreciation of the goods by the delay from the 13th of October to the 15th of November.

Defendant introduced testimony to the effect that, at the time the goods were shipped, there was a blockade of goods at East St. Louis, in consequence of which, though the goods reached Knightsbridge, fifty miles from Indianapolis, on the 13th of October, it was impossible to move them from that point. Every effort was made to do so, but, when the car in which these goods were shipped arrived at Knightsbridge, all the side tracks at that point, and between that point and East St. Louis, were full, as were also the East St. Louis yards. During this blockade, everything was forwarded across the river in the order of its arrival, except coal, perishable goods, and live stock, which were preferred.

The St. Louis fair began on the 4th of October and ended on the 9th. There is always an unusual pressure upon the roads at that time. This year there had been unusual rains during August, September, and October, which caused an overflow at Hannibal, and forced freight, usually sent by that route, to go by way of St. Louis. This rain also made it more difficult to remove the goods from the cars as they

arrived. On October 15th, a disease among horses broke out, which very much diminished the working force of the transportation company engaged in removing freight from East St. Louis across the river. But the main cause of the blockade was the fact that the railroads were engaged in a war of rates, and merchants were taking advantage of the low rates of freight offered by the lines employed by defendant and the competing lines. This is the testimony of defendant's witnesses; and it also appears from their testimony that the condition of things in East St. Louis was known to the agents of defendant by means of telegraphic communication at least once in every twenty-four hours.

The carrier is bound to deliver goods within a reasonable time; and there can be no doubt that the usual time is the only reasonable time, unless it appears that there were peculiar circumstances which made it practically impossible to deliver in the usual time. Not only the act of God, but unforeseen circumstances of accident or misfortune, have been held to excuse the carrier from delivering within the usual time. Where an obstruction occurred upon the railroad owing to an accident to a train belonging to another company which by law had a right to use the defendant's rails, it was held that the circumstances of the case must be considered by the jury in determining what was a reasonable time. *Railroad Co.* v. *Taylor*, 35 L. J. (C. P.) 210. A carrier is an insurer to the extent that the goods be delivered safely; but he does not insure their arrival according to any usual course of dealing; nor, in the absence of any special contract as to the time, does he insure their arrival at any particular day or hour. He must deliver within a reasonable time; and this is, ordinarily, a question of fact for the jury; and the usual course of delivery is, in most cases, *prima facie* evidence of what is a reasonable time. But it is held that, where there is necessary delay occasioned by some circumstance of which the carrier could not take notice at the time the transit began,

or by some circumstance of which the shipper knew, and whose natural effect he was bound to know, what is a reasonable time must depend upon the facts and circumstances of the case. The law will not hold a person responsible for negligence for not doing what it was practically impossible for him to do, where there has been no express contract to do the impossible thing. A delay may be necessary to a safe delivery; but it does not follow from all this that a carrier is excused for a period of passage prolonged beyond a time otherwise reasonable, where the delay was occasioned by an insufficiency of means of transportation known to him when he received the goods. And this is held not to be a legal excuse where the carrier has received the goods and conveyed them a part of the way. And if cases are found looking the other way, — as *Wibert* v. *Railroad Company* (12 N. Y. 245), in which the judgment was affirmed by a divided court, — we are bound by the rule adopted in this state. *Railroad Company* v. *Burrows* (33 Mich. 6) was a case in which delay was caused by an extraordinary contingency (the Chicago fire), and by humane efforts to convey provisions to a starving people. The contingency was of public notoriety, and its natural consequences in producing delay must have been known to the consignor at the time he shipped the goods. But where the road was blocked with freight, and the carrier failed to inform the shipper of this fact, and received the goods, the carrier was held liable for damages growing out of the delay. *Railroad Co.* v. *Burns*, 60 Ill. 284. And this is according to the decisions in our own state.

It is held in Missouri, that, where a common carrier has not the carrying capacity to forward goods without delay, its duty is to refuse to receive the goods, or to notify the consignor and to contract with a view to that fact; and that, where it has once received the goods, and especially where the transit has begun, in the absence of any special contract limiting the liability of the carrier, it is bound to carry them

to their destination without delay, and cannot set up an extraordinary influx of business beyond its carrying capacity as an excuse for a delay beyond the usual time. *Tucker* v. *Railroad Co.*, 50 Mo. 385; *Faulkner* v. *Railroad Co.*, 51 Mo. 311. And in *Read* v. *Railroad Company* (60 Mo. 208), the court says: "The [trial] court did right in modifying defendant's fourth instruction; as originally drawn, it released defendant from liability if it carried the potatoes with reasonable speed and dispatch under all the circumstances of the case. The contract was an absolute undertaking, and there was no exception made in reference to any circumstances by which defendant was surrounded."

The plaintiff in the present case having made out his *prima facie* case, it devolved upon defendant to show such circumstances as would be a legal excuse for the delay in delivery. As it appeared from the testimony of defendant's own witnesses that the obstructions which caused the delay in this case existed on October 7th, when the goods were shipped at New York, and were known to defendant's agents at that end of the line at that date, it does not appear that the circumstances shown by defendant were such as ought to be considered in determining whether or not the delay was reasonable. If defendant knew of the obstruction, its duty was to notify the shipper, and, if it took the goods, to receive them under a special contract, or else to assume the risk of damage from delay. If the shipper had known what the carrier knew, he might, as appellant urges, have had no other or better means of transportation, but he might have kept his goods in New York, and perhaps sold them there whilst they were in season.

The cause was given to the jury on the following instructions: —

"1. The court instructs the jury, that if they believe from the evidence that the goods in dispute were delivered to defendant, in New York, by plaintiffs, on or about October 7, 1881, and thereupon defendant gave the bill of lading in

evidence to plaintiffs, and defendant was at said time engaged in carrying goods for the public for hire between New York and St. Louis, and received plaintiff's goods and executed to them said bill of lading while so engaged, then the law is that defendant became bound to transport the goods to St. Louis in a reasonable time ; and if you believe from the evidence that said goods were not delivered in St. Louis within a reasonable time, you will find a verdict for the plaintiffs for the loss of value in said goods, if any, at the time of their delivery to plaintiffs, from what their value would have been if delivered to plaintiffs in a reasonable time, although you may further believe from the evidence that the delay in the transportation of said goods was caused by the refusal of some of the connecting lines of defendant to receive and transport them, or that such delay was occasioned by pressure of business on defendant's lines or the lines of its connecting roads, or by want of proper appliances and machinery on the road of defendant or its connecting lines.

"2. The court instructs the jury, that 'reasonable time,' as used in the instruction, means the time within which it was usual and customary to transport freight or goods of the kind mentioned in the petition from the city of New York to the city of St. Louis, by the means of transportation ordinarily used by defendants."

There was also an instruction as to the measure of damages, which we need not set out, as there is no contention as to that.

The defendant asked the following instructions, which were refused : —

"1. Defendant, the Union Line, did not contract to carry plaintiff's goods from New York to St. Louis in any definite or specified time ; but if defendant executed the bill of lading read to the jury, defendant did thereby contract to carry such goods from New York to St. Louis in such time as, under all the circumstances of the particular case,

it could reasonably be expected to carry them. If, there-fore, you believe from the evidence that defendant executed the bill of lading above mentioned, and that it carried the goods to St. Louis in as short a time as it could get them there by the exercise of ordinary care and diligence, con-sidering all the circumstances in which it was placed at the time, the amount of business, the obstruction to travel and the difficulties which defendant had to encounter, and that such difficulties were not due to any fault or negligence on defendant's part, then you will find for the defendant.

"2. If you believe from the evidence that defendant was in a situation to transport and deliver promptly such amount of freight as might ordinarily be expected to seek transportation upon its route, and that the delay in trans-porting and delivering the goods in question was occasioned by a sudden and extraordinary influx of freight on the lines of railroad, or other means of conveyance, which defendant might have used for such transportation, or by an unusual sickness among the animals used in transporting freight from East St. Louis to St. Louis, or by both of these causes, and that by no ordinary prudence or foresight, could these causes of delay have been foreseen, anticipated, or provided against, then you will find for the defendant.

"3. You are further instructed, that if you believe from the evidence that the same causes which operated to delay plaintiffs' goods on defendant's line would have operated to cause a like delay by whatever line they might have been shipped to St. Louis, or if you believe from the evidence that plaintiffs knew of the existence of said causes prior to the shipment of the goods, then defendant would not be liable by reason of the fact, if it be a fact, that its agents in New York knew of the blockade in St. Louis.

"4. It is not sufficient that plaintiffs show delay. In order to recover they must show to your satisfaction that the delay was caused by the negligence of defendant. Unless, therefore, it has been shown to your satisfaction

that the delay in delivering the clothing in question to plaintiffs was caused by the negligence of defendant, you will find a verdict for defendant.

" 5. If you believe from the evidence that there was a blockade in the yards of the railroads terminating in East St. Louis, and of the Bridge Company both at St. Louis and East St. Louis, and that the Bridge Company was in consequence thereof unable to deliver at St. Louis cars of the different roads as fast as they arrived, and that this state of facts was due to no fault or negligence of defendant or of the said Bridge Company, then you are instructed that defendant was not bound to forward the car containing plaintiffs' goods in preference to other cars, but only to do what it fairly could, with the exercise of full diligence, to get the goods of all shippers forwarded as rapidly as possible under the circumstances, and defendant had the right to make a reasonable discrimination in favor of some classes of goods. And it is for you to determine whether the discrimination in favor of cars containing live stock, perishable property, and coal was reasonable, and whether defendant treated plaintiffs fairly as compared with other shippers of general merchandise whose goods were shipped at or about the same time or prior thereto.

" 6. The court instructs the jury that the law in such case as this exacts nothing unreasonable, but requires only diligence and reasonable promptness under all the circumstances in transporting the goods."

It is plain that if the views of the law which we have expressed above are correct, there was no error in refusing these instructions. Number four was properly refused, because there was no evidence to warrant it. Appellant argues that the firm of Seidenbach, Schwab & Co., of New York, is the firm of Schwab & Co., of St. Louis, and that consignor and consignee are the same person; that there is testimony that the firm here knew of the blockade as well as the appellant. But, if a firm has a store in St. Louis and

another in New York, and the New York partners ship goods from that point to St. Louis in ignorance of a blockade on the road, we do not see that this shows contributory negligence.   There is nothing in the evidence tending to show that the New York house had notice of the blockade, and the St. Louis house might safely rely upon the carrier doing its duty and notifying shippers in New York of the blockade at East St. Louis.

There are some objections to evidence, but we do not think that they are of weight.   Defendant's own witness, Dr. Taussig, says that Freeborn was the St. Louis agent of defendant.   Nor do the statements of Freeborn cut any material figure in the case, except so far as they go to show that the bill of lading offered in evidence was really the bill of lading of defendant, as to which there is no serious dispute.   Freeborn was at defendant's general office at St. Louis, assuming to be and acting as defendant's general agent here, and it is morally impossible that this could have been without defendant's knowledge.

We see no sufficient reason for reversing the judgment in this case, and, with the concurrence of all the judges, it will be affirmed.