# THE STATE OF IOWA v. KNIGHT.

1. **Grand jury: DRAWING.** It is no valid objection to a grand jury that the judges of election in the various townships returned in all *eighty-five* instead of *seventy-five* names from which to select the grand jurors. Neither does the fact that the names of the persons selected to compose the jury were not entered upon the election book, affect the validity of the jury.

2. **Change of venue: PREJUDICE OF JUDGE.** The Supreme Court will not interfere with an order of the District Court overruling an application for a change of venue on the ground of prejudice in the mind of the judge, when a clear case of abuse of the discretion vested in the District Court is not made manifest by the record. (*The State of Iowa* v. *Ingalls & King,* 17 Iowa, 8.)

3. **Courts: CONFLICTING TERMS.** Where a trial of a cause is commenced in a term with the *bona fide* expectation and belief that it will be concluded before the day shall arrive when the judge is directed, but not imperatively required, by law, to hold court in another county, he may remain, conclude the trial of that case, receive the verdict and pass judgment, even though this may happen to be done on a day, or at a time, when regularly he would be holding court in another county.

—— Whether he may appoint a special term at a day fixed by law for regular term in another county, *query?*

—— *Davis* v. *Fitch*, 1 G. Greene, 406, and *Grable* v. *The State*, 2 Id., 559, doubted.

4. **Evidence: ADMISSION: CONFEDERATES.** Admissions made after the commission of an offense by a confederate in the crime, disclosing the names of those associated with him in the commission thereof and the manner of its commission, are admissible against such confederates, though not present when they were made, when it is shown that the latter have made confidential statements which could be true only upon the theory that the admissions offered were true.

*Appeal from Delaware District Court.*

WEDNESDAY, JUNE 21.

CHALLENGE TO GRAND JURY — CHANGE OF VENUE — TERM OF COURT, WHEN IT ENDS — EVIDENCE IN SUPPORT OF CONFESSION, &c. — At the September Term, 1864, of the

District Court of Buchanan county, the defendant, Knight, was jointly indicted with Christian Rorabacher and Wallace P. Pollard, charged with having burglariously entered the office of the county treasurer, in the court house in that county, on the night of the 17th day of March, 1864, and with having stolen from the safe therein, money of the county, and of others, to the value of about $26,000.

At the same term the venue was, at the defendant's instance, on the ground of popular excitement in the county, changed to the Delaware District Court. At the April Term, 1865, of the court last named, Knight, who had pleaded "not guilty," was put separately upon his trial, convicted, and sentenced to six years confinement in the penitentiary. The errors assigned, and questions made, are stated in the opinion. Knight appeals.

*Isaac L. Allen,* Attorney-General (with whom *William Chandler*), for the State. .

*I. M. Preston & Son* (with whom *W. T. Barker*), for the defendant.

DILLON, J.—I. Did the court err in overruling the defendant's challenge to the grand jury? The chief

1. GRAND JURY: drawing. objection alleged against the grand jury is, that the judges of elections in the various townships returned in all 85, instead of 75, names from which to select the fifteen grand jurors required by law. The extra names were stricken off before the grand jury was drawn, and fifteen jurors were regularly drawn and summoned. There is here no error, nor semblance of any.

Nor was it a valid objection to the grand jury that no copy had been made into the election book of the lists of persons selected by the judges of elections in the several townships.

II. The ruling of the District Court, denying the defendant a continuance, we cannot perceive to have been erroneous; and as it presents no new question of law, we content ourselves with the observation that the application was open to the objections made thereto by the district attorney.

III. At the April Term, 1865, of the Delaware District Court, Knight made an affidavit that the Hon. JAS. BURT, judge of the 9th judicial district, was so much prejudiced against him that he could not obtain a fair and impartial trial. He stated no facts, nor any reason why he did not make the objection to the *judge* when, in the fall preceding, he applied for and obtained the change of venue from Buchanan county. On this affidavit he now asked a change of venue from the 9th judicial district.

2. CHANGE OF VENUE: prejudice of judge.

During the argument the defendant offered to file the affidavits of three persons " in support of his application for a change of venue," but not stating what the affiants would depose to. The court refused to receive these affidavits, and refused to change the venue.

We see here no such exercise of discretion as would justify a reversal of the judgment. It was a *matter of discretion* in the court, whether it would receive additional affidavits on the argument, if indeed they are, in such case, in any stage, proper. It was certainly incumbent on the defendant to negative the presumption, arising upon the circumstances, that the application had not its origin in a desire to *postpone the trial,* for which, at great trouble and expense, the State had, in good faith, prepared. That the court did not err see *The State* v. *Ingalls,* 17 Iowa, 8.

IV. It is next claimed by the defendant that the judgment appealed from is *coram non judice,* because rendered after the expiration of the term. The facts are these: The regular April Term, 1865, of the District Court of Delaware county, commenced Monday, April

3. COURTS: conflicting terms.

3d. Various motions for continuance, change of venue, &c., were interposed, *whose* disposition so consumed the time that the trial did not commence until Saturday P. M., April 8th. The record states, that the cause having been proceeded with, until the evening of the 12th day of April, 1865 (Wednesday), the court adjourned until the 14th day of April, 1865, on which last day, when the cause was called to resume the trial, defendant's counsel objected to further proceeding with the trial, on the ground that the *term had expired* on Wednesday evening, and the time for holding the District Court in Buchanan county, in the same district, had commenced, and *no special term* in Delaware county had been ordered. This objection was overruled, and, whether properly so, presents one of the main questions upon which counsel have relied to reverse the judgment appealed from.

The statute provides that courts in the ninth district shall be held "in *Delaware* county on the first Monday of April and September in each year." And "in Buchanan county on the first *Thursday* after the second Monday in April and September in each year." Laws 1858, ch. 150, §§ 10, 11. There is no provision in words declaring that the term for all purposes must end before, and cannot, for any purpose, extend beyond the time fixed by law for the first day of the court in another county. Other provisions of the statute have a bearing upon this question. Thus, in the case at bar, the judge, under the statute, had three days in which to appear at the Buchanan District Court, it being the clerk's duty meanwhile to adjourn the court from day to day. (Rev., § 2665.) "If the judge is sick," it is further provided, section 2670, "*or for· any other sufficient cause is unable to attend court at the regularly appointed time*, he may, by written order, direct an adjournment to a particular day," &c., and a failure to hold term does not

invalidate proceedings. Rev., § 2671; *Mattingley* v. *Darwin*, 23 Ill., 605; *Downey* v. *Smith*, 13 Id., 671.

The verdict in the case in hand was rendered April 15th, and judgment afterwards pronounced. Were they void?

Taking all these provisions of the statute together, we hold, that where, as in the case at bar, a trial is commenced in the midst of a term, under the *bona fide* expectation and belief that it can be concluded before the day shall arrive when the judge is directed, but not imperatively required, to hold court in another county, he may remain and conclude that case, receive the verdict and pass judgment, even though this may happen to be done on a day, or at a time, when regularly he would be opening or holding court in another county.

This is the only question which we decide, and it is very different from holding that he may appoint a special term at a day fixed by law for the regular term in another county. *Archer* v. *Ross*, 2 Scam. (Ill.), 303.

The exigency which here arose, constituted "sufficient cause" to render the judge "unable to attend (the Buchanan) court at the regularly appointed time," and would authorize him to direct an adjournment to a particular day.

This ruling does not deprive the people of the other county of a term, though it may, for a few days, postpone it. It removes the temptation, on the part of the defendant or his counsel, when the terms of court are of limited duration, *to skirmish* for time in the earlier portion of the term, and to talk against time, and otherwise protract the trial in the latter portions of the term. In stating this as among the reasons for our opinion, we exonerate the counsel for defendant, in the case under consideration, from being actuated by any motives of this character.

It also prevents the defendant from claiming, and perhaps successfully, if a jury shall be discharged, that he

has once been in jeopardy, and cannot again be put upon his trial. (*The State* v. *Callendine*, 8 Iowa, 288, and authorities cited.)

It does not contravene the statute, for there is no provision in words declaring when a term shall end.

The cases of *Davis* v. *Fish* (1 G. Greene, 406), and *Grable* v. *The State* (2d Id., 559), are cited and relied on by the defendant. Whether those cases, under the statutes then in force, were decided correctly, may admit of great doubt. These cases go upon the ground that two terms of court cannot be held in two different counties by the same judge, concurrently; that the term of court necessarily expires at 12 o'clock at night of the secular day next preceding the first day fixed for court in another county, whether that court is *actually* opened or not, and this as respects causes on trial and not finished. This seems to be rather a rigid and technical construction; and it is one which we hold has no application, under our statutes as they now stand. It was not, as we have seen, imperative on the judge to open court in *Buchanan* county *Thursday* morning, he might adjourn the same by an order, which it was stated on argument he did, and meanwhile continue and complete a pending trial, and he would not, in any just sense, be holding two terms of court in different counties at one and the same time.

In support of these views, see *Weaver* v. *Cooledge* (15 Iowa, 244); *Mendam* v. *Commonwealth*, 6 Randolph (Va.), 704.

VI. The next question relates to the admission in evidence of certain declarations of the co-defendants, Rorabacher and Pollard. The question here made is novel, and it is essential to state the attitude of the case at the time, the nature of the testimony admitted, and the object of it. The money was stolen from one of Lillie's patent safes (old patent), which had

4. EVI-
DENCE: admissions: confederates.

been forced and blown open. It was shown upon the trial that two or more persons must necessarily have been concerned in the commission of the offense, and there was much independent evidence, aside from confessions, inculpating the defendants.

One Yates, of the Chicago detective force, came to Iowa and had reason to suspect the defendants. Unknown to them, he followed Knight and the others to different places. Himself invisible, he pursued Knight like a shadow; noiselessly but certainly, with or after him. From Waterloo, he followed him to Davenport; then went to Burlington; thence back to Davenport. One Felker, passing under the name of Black, was employed by the public officers to assist Yates. Felker's *role* was that of a decoy, to play the fellow burglar. He and Knight soon became intimate, and detailed to each other their various *exploits*. Felker got up a sham "sight" on the safe of the sheriff of Scott county (the sheriff being notified in advance), and it was broken open by Knight and Felker. Felker occupied room 44, at the Scott House, Davenport; and Yates the adjoining room, 43. A strip was taken from under the door between the two rooms, and the draft so arranged as to make it easy to overhear any conversation occurring in Felker's room. Knight called upon Felker at No. 44, at a time when Yates and Westfall, the sheriff of Buchanan county, and Lyter, the sheriff of Scott county, were in No. 43, with ears to the floor. At that interview, as shown by the testimony of Yates, Felker and Westfall, corroborated by Lyter, and at other times, Knight admitted that it was he, Rorabacher and Pollard, who had committed the Buchanan county robbery, and he gave the details and circumstances of it. Pollard was arrested about two weeks after this, in Cortland county, New York, by Yates, who telegraphed to the sheriff of Buchanan county to arrest Knight. Pollard was brought to Independence; Rora-

bacher and Knight were also arrested separately and kept apart. Pollard was informed simply that Knight ·had *confessed*, but not what he had confessed. After Pollard's arrest, he first saw Rorabacher in his room in the Montour House, in Independence, where he was confined; nobody else was in the room and neither of them was aware (this is clearly shown by their own and other testimony) that their conversation was or could be overheard.

Under these circumstances, the court allowed the following conversation, overheard through a hole in the floor, against Knight's objection, to go to the jury: "Pollard says to Rorabacher, 'Knight has blowed on us'; Rorabacher says, 'God d—n Knight, he never could be trusted.' Pollard says, 'We are *salted* this time.' Rorabacher says, 'That d—n detective is sharper than a cut rifle,'" &c. This is enough to illustrate the principle. This evidence was objected to by the counsel for Knight, on the ground that the acts and declarations of one co-defendant, made after the commission of an alleged offense, can be received only against the party making the declaration or doing the act.

Ordinarily this objection should, of course, have been sustained. But under the special circumstances of this case, it was not an error to overrule it. The object of evidence is to arrive at the truth. Whatever circumstance tends to this end is admissible, provided it is not of a nature to mislead rather than to guide. Whether an item of evidence is proper, often depends upon "the particular circumstances of the case under which it is offered." (Per Abbott, Ch. J., in *Doe* v. *Pettett*, 5 B. & Ald., 224; *County of Mahaska* v. *Ingalls*, 16 Iowa, 81, 85.)

We have found no case presenting the exact point in this. Yet, on principle and by analogy, the ruling below may be sustained. The law is well settled, that a confession, to be admissible against a prisoner, must be *voluntary*,

that is, neither obtained by the application of hope, on the one hand, or fear on the other. But though a confession be not voluntary, and therefore inadmissible, yet if any fact is stated, as that the weapon used, or property stolen, may be found in a particular place, and it is so found, this may be proven against the prisoner. (*Warrichall's case*, 1 Leach, 264; *Reg.* v. *Gould*, 38 Eng. C. L. [9 C. & P.], 364; 1 Greenl. Ev., 229, 231, 232; *Duffy* v. *The People*, 26 N. Y., 588, and authorities cited; *Gates* v. *The People*, 14 Ill., 433; 2 East. P. C., 16, § 94; *Commonwealth* v. *Kemp*, 9 Pick., 511.) Why is this so? Because it is thus made to appear that the confession is true. So here, Knight had confessed, on several occasions, that he was guilty, and Rorabacher and Pollard were his confederates. The latter meet in the way above described, and confidentially make statements which they could only make upon the theory that Knight's confessions were true.

It is clear, from the previous rulings of the court, and from the instructions, that these declarations were not admitted as independent testimony against the defendant, or a proof of the facts therein admitted; but simply as a fact or circumstance tending to show that Knight's statement or confession, that he and these persons were associates in the commission of the offense in question, was true.

It did thus tend, and neither rationally, philosophically or legally, can we, under the circumstances, see any objection to it for the purpose indicated.

It was not the testimony upon which the State relied for a conviction, and its admission or absence did not, we are satisfied, have any effect, or at least controlling effect, in producing the verdict.

If its reception should be conceded to be erroneous, we should, in view of the clear and conclusive nature of the other testimony, and of our duty as prescribed by statute,

Rev., § 4925, hesitate before we should, for this reason alone, reverse a judgment otherwise fair and unexceptionable. The statute requires us to disregard "technical errors or defects which do not affect substantial rights." We remark, in conclusion, that the instructions are in the usual language of the books, and are not obnoxious to the objection made against them in argument.

Affirmed.