*In the Matter of the Petition of* JOHN DOSSETT *for a Writ of Habeas Corpus.*

1. DISTRICT COURT—*Adjourned Sessions*—The district courts of Oklahoma Territory have authority and power to hold adjourned sessions of court, after the commencement of the regular term, at a time or times not designated in the order of the supreme court fixing the times when terms of said court shall begin.

2. JUDGMENTS—The proceedings of such adjourned sessions are not *coram non judice* and void, notwithstanding the regular term in another county in the same district had intervened between the time of the adjournment and the convening of the adjourned session.

3. JUDGE—*Absence*—After the court has once regularly convened on the day fixed by order of the supreme court, it can expire only by adjournment *sine die* or by operation of law, and unless adjourned *sine die*, will not so expire by operation of law, until the first day of the next regular term in the same or another county, and failure of the judge to attend on a distant day to which the said court is adjourned, after having been regularly convened on the date fixed, will not result in the loss or lapse of the term.

4. SESSION—*Conflict*—Notwithstanding the Payne county court was theoretically in session, during the same period that the petitioner was tried for murder, in Logan county, yet such session of court was not such as the law contemplates in the observance of the rule that two courts cannot be in session in the same district at the same time.

5. SAME—Under the law as it now exists in this territory, since the act of congress of December 21, 1893, *quaere:* Can two courts, in the same district, be in session at the same time?

*Original Proceeding in Habeas Corpus.*

On the 1st day of January, 1894, John Dossett filed his petition for a writ of *habeas corpus*. He was tried

on an indictment, returned by the grand jury of Logan county into the district court, for the crime of murder. His trial commenced on the 18th day of August, 1893, and continued from day to day until the 28th day of August, 1893, the court sitting with the powers of a United States district and circuit court. On the latter date, a verdict of guilty was rendered against him, as charged in the indictment. Motions for a new trial and arrest of judgment were filed, passed upon and overruled by the court, and on the 9th day of November 1893, the court pronounced judgment of death upon him, fixing the date of his execution, January 8, 1894. From the judgment of the court the defendant has appealed, and the appeal is now pending in this court. In the meantime, to-wit: on the 1st day of January, 1894, he instituted this proceeding in *habeas corpus*, alleging:

"1. That he is illegally and unlawfully restrained of his liberty, and is confined in a certain jail, commonly known and designated as the United States jail, situated in the city of Guthrie, in the county of Logan and the Territory of Oklahoma.

"2. That he is so held by one E. D. Nix, who is the lawfully appointed and qualified United States marshal for Oklahoma Territory, and that he is so held by the said Nix under and by virtue of a certain commitment and order of the district court of Logan county, Oklahoma Territory, as more fully appears hereinafter.

"3. That heretofore, to-wit: on the 18th day of August, 1893, this defendant was being held in custody in Logan county, Oklahoma Territory, charged with the crime of murder in the first degree, and was so held for the purpose of being prosecuted in the district court of Logan county, Oklahoma Territory, sitting as a United States court.

"4. That on said 18th day of August, 1893, this defendant was called to the bar of the district court of Logan county, aforenamed, and a trial upon said indictment was begun, in said court, and that said

trial was continued from day to day and proceedings had therein until the 28th day of August, 1893, at which time a verdict of guilty was rendered in said cause against this defendant.

"5. That afterwards a motion for a new trial was filed in said cause and the same was passed upon by said court and overruled, and a motion in arrest of judgment was thereupon filed, which motion was overruled by said court, and this defendant was, by said court, sentenced to be hanged on the 8th day of January, 1894.

"6. That this defendant is now being held by the power and process of said court, under and by virtue of the proceedings herein set forth. That heretofore, to wit: on the 28th day of January, 1892, the Territory of Oklahoma was sub-divided into three judicial districts, as by the supreme court of the Territory of Oklahoma ordered and directed, and that one of said judicial districts was known and designated as the First judicial district, and that said judicial district comprised the counties of Logan, Payne and A, in said Territory of Oklahoma. That on said 28th day of January, 1892, the said supreme court of the Territory of Oklahoma, met in session at the city of Guthrie, and pursuant to the power and authority vested in said court by the Organic Act of the Territory of Oklahoma, made and entered of record an order, providing that the terms of the district court, in the First judicial district, should be as follows: 'That a term of said district court should commence in the city of Guthrie, in the county of Logan, on the first Monday of March and September of each year, and that a term of said district court should commence in the town of Stillwater, in the county of Paine, on the third Tuesday in April, and first Tuesday in November of each year, and that a term of said district court should commence in the town of Chandler, in the county of A, on the fourth Tuesday of May and last Tuesday of November of each year.

"7. That a copy of the record of the proceedings of the supreme court of the Territory of Oklahoma, had on said 28th day of January, 1892, in so far as the same relates to and affects the terms of court, to be holden in the said First judicial district, is attached

to this petition, marked 'Exhibit A' and made a part hereof.

"8. That on the said 28th day of January, 1892, and at all of the times mentioned in this petition until the ending of the said trial of this petitioner as herein set forth, the Hon. E. B. Green was judge of the First judicial district of the Territory of Oklahoma aforenamed.

"9. That in compliance with the provisions of said order so made by the supreme court of the Territory of Oklahoma, the Hon. E. B. Green, judge of the First judicial district aforesaid, opened court in the town of Stillwater, in the county of Payne, in the month of April, and on the third Tuesday thereof, as by law provided, and held court therein at divers and sundry times during the months of April, May and August, and adjourned said court from time to time, from the commencement thereof in the month of April, until the 1st day of September, 1893.

"10. That during all of the time that the said trial was being held in which this petitioner was convicted in the county of Logan, as herein set forth, the district court of the First judicial district was in actual session in the county of Payne, in said First judicial district.

"11. This petitioner avers, that by reason of the premises, the Hon. E. B. Green had no right, power or authority to hold a session of the district court in the county of Logan as aforesaid, and that the said district court of the county of Logan was not, and could not be, in session for the purposes of the transaction of any business whatsoever, and that all of the acts done and performed by the said E. B. Green, in the trial of said cause, were without authority of law and contrary to law, and were, and are, absolutely void and of no force or effect whatsoever.

"12. This petitioner says that his trial and conviction were, and are, absolutely void, and that his incarceration thereunder is illegal and unlawful."

The petition is verified by George Gardner, one of the attorneys for the petitioner.

Exhibit "A," referred to in the complaint, reads as follows:

"UNITED STATES OF AMERICA, TERRITORY OF OKLA-
HOMA—SS.:

"Be it remembered, that on the 28th day of January, 1892, the supreme court of the Territory of Oklahoma met in the city of Guthrie, pursuant to adjournment, and there were present Hon. E. B. Green, chief justice, presiding, and Hon. A. J. Seay, associate justice; John F. Stone, Esq., assistant United States attorney; William Grimes, marshal, by J. C. Robb, deputy; Charles H. Filson, clerk, and E. P. Babcock, crier:

"Proclamation of the opening of said court having been made by said crier, the following proceedings were had :

"*In re: Changing the Date Holding Terms of the District Court in the Various Districts of the Territory of Oklahoma.*

"It is ordered by the court that a term of the district court shall be held in the First judicial district of said territory, at the city of Guthrie, county of Logan, commencing on the first Monday of March and September, of each year, and that a term of said district court shall be held at the town of Stillwater, in the county of Payne, commencing on the third Tuesday in April and first Tuesday in November, of each year, and that a term of said district court shall be held at the town of Chandler, in county A, commencing on the fourth Tuesday in May and last Tuesday in November, of each year."

By agreement of the parties, the issuance of the writ was waived, and all of the questions submitted upon the petition and the agreed statement of the record and the facts as follows:

"*District Court, Payne County, Oklahoma Territory :*

"Be it remembered, that now, at this time, April 18, 1893, the district court of the First judicial district, of the Territory of Oklahoma, sitting in and for

said county of Payne, was convened at the hour of 10 o'clock A. M., for the regular April term, 1893, and was, by order of court and proclamation of court crier, duly made open for actual transaction of business. There was present, Hon. E. B. Green, judge, John F. Stone, assistant United States attorney, T. J. Hueston, deputy United States marshal in charge, and T. G. Risley, clerk.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered, that now, at this time, April 29, 1893, the district court of the First judicial district of Oklahoma Territory, sitting in and for Payne county, was, by order of court, duly adjourned until 10 o'clock A. M., May 2, 1893, after having had the foregoing proceedings.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered that now, at this time, May 2, 1893, the district court of the First judicial district of Oklahoma Territory, sitting in and for Payne county, Oklahoma Territory, was, by order of court, duly adjourned until 10 o'clock A. M., May 3, 1893.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered that now, at this time, May 3, 1893, the district court of the First judicial district of Oklahoma Territory, sitting in and for Payne county, in said territory, was, by order of court, and proclamation of court crier, duly convened at the hour of 10 o'clock, A. M. There were present, Hon. E. B. Green, judge; John F. Stone, assistant United States district attorney, T. J. Hueston, deputy United States marshal in charge, and Chas. W. McGraw, deputy district clerk.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered, that now, at this time, May 5, 1893, the district court of the First judicial district of Oklahoma Territory, sitting in and for Payne county, was, by order of court and proclamation of court crier,

duly adjourned until Tuesday, August 1, 1893, at 10 o'clock A. M.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered, that now, at this time, August 1, 1893, it is ordered, considered and adjudged that the district court of the First judicial district, in and for said Payne county, be, and it is hereby adjourned until Tuesday, August 15, at 10 o'clock A. M., A. D. 1893.

"*District Court, Payne County, Oklahoma Territory:*

"And now, on this 15th day of August, A. D., 1893, it is ordered by the judge of the said court, that the district court of Payne county, Oklahoma Territory, stand adjourned until 10 o'clock A. M., Monday, August 21, A. D., 1893.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered, that now, at this August 21, 1893, it is ordered, considered and adjudged that the district court, in and for the said county, be, and it is hereby, adjourned until Wednesday, August, 23, 1893.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered, that now, at this time, August 23, 1893, it is ordered, considered and adjudged that the district court of the First judicial district of Oklahoma Territory, in and for said Payne county, be and it is hereby, adjourned until 2 o'clock P. M., Tuesday, August 29, A. D., 1893.

"*District Court, Payne County, Oklahoma Territory:*

"Be it remembered, that now, at this time, August 29, 1893, the district court of the First judicial district, sitting in and for Payne county, in said territory, at Stillwater, was convened by order of court, and proclamation of court crier, at the hour of 2 o'clock P. M. for the actual transaction of business. There was present, Hon. E. B. Green, judge; T. G. Risley, clerk; S. P. King, county attorney in and for said Payne

county, and F. M. Burdick, sheriff, who opened court as court crier.

"*District Court, Payne County, Oklahoma Territory* :

"Be it remembered, that now, at this time, September 1, 1893, the district court of the First judicial district of Oklahoma Territory, sitting in and for said Payne county, was, by order of court, duly adjourned until Tuesday, November 7, A. D., 1893, the same being the first day of the November term, 1893.

"*Territory of Oklahoma, Payne County, ss.* :

"I, W. L. Norman, deputy clerk for Payne county, of the First judicial district of Oklahoma Territory, do hereby certify that the above and foregoing is a true and correct transcript of the records and journal of the district court of the First judicial district of Payne county, and I further certify that the said district court adjourned, from day to day, and was in session each day after it convened, on April 18, until April 29; and I further certify that the said court adjourned, from day to day, and was in session each day, from May 3 until May 5; and I further certify that the said court adjourned, from day to day, and was in session on each day from August 29 until September 1.

"Witness my hand this 10th day of January, 1894.

"(Signed)                              W. L. NORMAN,

"(SEAL)     Deputy District Clerk for Payne County.

"IN THE SUPREME COURT OF OKLAHOMA TERRITORY.

"*In the Matter of the Illegal Imprisonment of John Dossett:*

"It is hereby stipulated and agreed, between the parties hereto, that the transcript hereto may be read in evidence upon the hearing of the *habeas corpus* proceedings, pending in the above court, wherein John Dossett is petitioner, without any objection thereto by either party, and it is further agreed that the district court of Payne county adjourned from day to day, and was in session, from April 18 until April 29, inclusive, and that said court adjourned from day to day and was in session from May 3 to May 5, inclusive, and that

Opinion of the Court.

said court adjourned from day to day and was in session from August 29 to September 1, inclusive, as shown by the accompanying certificates.

"(Signed)   A. H. HUSTON and GEORGE GARDNER,

"Attorneys for Petitioner.

"JOHN F. STONE, Assistant United States Attorney."

It was further stipulated by the parties, as follows:

"IN SUPREME COURT OF OKLAHOMA.

"*In Re: Imprisonment of John Dossett :*

"It is hereby stipulated that the trial of the petitioner, in Logan county, took place between the 18th and 28th days of August, 1893, commencing on the 18th and ending on the 28th.

"(Signed)                    JOHN F. STONE,

"Assistant United States Attorney.

"GEORGE GARDNER, Attorney for Petitioner."

The case was argued orally, before the full bench, and very able and exhaustive written briefs submitted, by counsel for the petitioner, and the government. Writ denied.

*A. H. Huston, George Gardner* and *J. V. Beekman,* for petitioner.

*John F. Stone, Assistant United States Attorney,* for the United States.

The opinion of the court was delivered by

SCOTT, J.:   This proceeding presents three important questions, and upon the solution of each of them depend issues of great importance to the petitioner, the bench, the bar, and the public:

1. Has the district court any authority and power to hold adjourned sessions of court after the commencement of a regular term, at a time or times not designated in the order of the supreme court fixing the time when the terms of court shall be held?

2. Are the proceedings of such adjourned term *coram*

*non judice* and void, and especially if the regular term of court, in another county in the same district, had intervened between the time of the adjournment and the convening of the adjourned session?

3. Was the district court of Payne county actually in session at the time the petitioner was tried and convicted?

Counsel for the petitioner presents these questions to the court, in their brief, in a very scholarly manner, and should certainly be commended for the zeal and ability shown in its preparation.

Upon the first question there appears to be less diversity of opinion than upon the second. Indeed, in the abstract, and as applied to courts of general jurisdiction, the weight of authority, gathered from the reported cases throughout the United States, holds that this is one of the necessary powers, irrespective of any grant or concession of right by express statute, and without which inherent power of conduct of its affairs and business, a court would become a mere machine, in which condition, should any fortuitous circumstances cause a suspension of its business and functions in the midst of a regular term, it would have no power within itself to adjourn over, and again start its machinery into operation, until its next regular session.

Courts in all civilized countries are instituted for the dispatch of public business, and are not to be circumscribed by legal technicality, in this rapid commercial era, by the rusty usages of the past, but, adapting themselves to the progressive march of civilization, must conform their rules of procedure to meet the necessities of the age. Counsel for petitioner argue with considerable ingenuity against the power of the district court of this territory to hold any other than regular terms of court, and place particular stress

upon certain words, contained in that portion of the Organic Act of the territory which directs the action of the supreme court, in fixing where, and when, terms of the district court shall be held, in the various districts.

· That portion of the Organic Act referred to, reads as follows:

"Section 9. The supreme courts shall define said judicial districts, and shall fix the times and places, at each county seat, in each district, where the district court shall be held, and designate the judge who shall preside therein."

Now there can be no doubt that it might have been competent, under this section, for the supreme court not only to designate the day upon which each term should commence, but also to designate the day on which each term should end, had that body seen proper to do so; but, in performing their duties under this head, that court, in its wisdom, saw fit only to fix the dates of the commencement of each term of the district court, in the several counties, and remained silent as to the duration and the date of the termination of the session; hence, when we come to consider the question of the limits of time allotted to each term, and in connection therewith also, when each term shall be regarded as at an end, we must necessarily find where the power abides to continue in session, adjourn over temporarily, or adjourn the term *sine die.*

No contention will arise upon the proposition that a court of general jurisdiction, once in session, upon the day fixed by law for its regular term to commence, may continue in session, should its business justify, until such time as another regular term of the same or another court in the same district shall arrive, when, if not adjourned over by the action of the court itself, by operation of law, one term would end and the new term would begin; nor will there be any con-

tention, the length of time a court shall last not being fixed, that the court may adjourn *sine die* at any time after convening. Thus far, at least, the court has full control of its own business and actions. A much more serious question arises, when we come to a consideration of the point whether the district court can adjourn for a considerable number of days, and then on the adjournment date, resume its functions, and thus resumed, on adjourned sessions, become a part of the regular term.

It is strenuously contended by counsel for petitioner, that in this territory, under the provisions of the Organic Act, and by the action of the supreme court in fixing the times and places when terms of court shall be held, adjourned sessions can not be held by the district court, but that when an adjournment of the regular term is taken, that the term lapses, and the session cannot again be resumed without an order of the supreme court permitting it to be done.

On reason, and weight of authority, we do not think the position of counsel is tenable. The language of the Organic Act, interpreted by the ordinary rules of construction, may well be held to mean that the supreme court shall fix the time when courts shall begin to be held, without any reference to the duration, or continuity, of their holding, that being left to the wisdom of the presiding judge, whose knowledge of the volume of business to be transacted, in each court of his district, would enable him to best judge of the necessity for longer or shorter sessions of each court. Furthermore, it is evident from the language of the Organic Act, that congress did not mean to confer on the supreme court the sole power to determine the length of time each term should last, for had congress so intended, it would have been easy to have made such a provision. No provision of this kind being contained in the act, and the supreme court, in fixing

the terms of the several district courts, having placed no limitation on the length of the terms, it may fairly be ·inferred that the control of these matters was purposely left in the discretion of the various district judges, provided that the exercise of such authority is within the ordinary scope and range of their powers, apart from any express enactment, or rule of procedure, conferring upon them the right to do so.

Upon this branch of the question we derive valuable assistance from the very able and masterly brief of counsel for the government, which is marked throughout by evidences of deep and careful research, extending over the entire field of American authorities, the recapitulation of which may well be said to set at rest all doubt as to the power of courts of general jurisdiction to control and direct their own sessions, after once convening on the day fixed by law.

In the case of the *Mechanics' Bank of Alexandria vs. Withers*, 6 Wheaton 106, Chief Justice Marshall, in the opinion of the court, says:

"The sole question in the cause is, whether the adjournment, from the 16th day of May to the fourth Monday in June, was a continuation of the April term, or constituted a distinct term?

"There being nothing in any act of congress which prevents the courts of the district from exercising a power, common to all courts, that of adjourning to a distant day, the adjournment on the 16th of May to the fourth Monday in June, would be a continuance of the same term, unless a special act of congress expressly enabling the courts of the district to hold adjourned sessions, may be supposed to vary the law of the case. That act is in these words: 'And the said courts are hereby invested with the same power of holding adjourned sessions that is exercised by the courts of Maryland.' These words do not in themselves purport to vary the character of the session. They do not make the adjourned session a distinct session. They were probably inserted from abundant

caution, and are to be ascribed to an apprehension that courts did not possess the power to adjourn to a distant day until they should be enabled to do so by a legislative act. But this act, affirming a pre-existing power, ought not to be construed to vary the nature of that power, unless words are employed which manifest such intention. In this act there are no such words, unless they are found in the reference to the courts of Maryland. But, on inquiry, we find that in Maryland, an 'adjourned session' is considered as the same session with that at which the adjournment was made. Since, then, the term at which this conditional or office judgment was to become final was still continuing when it was set aside, and the defendant permitted to plead to the declaration, there was no error in the proceeding."

In the case of *Harris vs. Gest*, 4 Ohio St. 470, citing the case of *Mechanics' Bank of Alexandria vs. Withers*, *supra*, with approval, the court says:

"Courts are not limited, in their power of adjournment, to an adjournment from one day to the succeeding day. They have an inherent power to adjourn to a more distant day when not restrained by the constitution or the statute law. * * * When this power is exercised, the sitting after the adjournment is a prolongation of the regular term, and, in contemplation of law, there is but one term."

The supreme court of Wyoming, *in re: M'Donald*, 33 Pac. 18, says,

"The question involved here was presented to this court, and was discussed at length, in the case of *Sterling vs. Wagner*, 31 Pac. Rep. 1032, and, although the membership of this court has been changed since that decision was rendered, which may account for the presentation of the question anew, we adhere to the ruling in that case, and hold such an adjournment over an intervening term, or portion of a term, of the district court for another county in the same district, valid. It was in accordance with the universal practice of the district court in this jurisdiction to so adjourn over a term, or a portion of a term. It was deemed unnecessary and unwise to disturb this practice which has received such sanction of these courts,

as such an action on our part would result in disturbing and annulling too many judgments. Besides, there never was any statute in this jurisdiction prescribing the duration of any term of the district court, the length of its sessions, or when it should adjourn, and in the absence of any positive law to the contrary, a district court, being a court of general and superior jurisdiction, has power to adjourn to a distant day, even over an intervening or portion of a term held in another county or the same district during the interval of adjournment." (See also *Smurr vs. The State*, 105 Ind. p. 125; *Cassily vs. State*, 32 Ind. p. 62; *Samuels vs. State*, 3 Mo. 73; *Lewin vs. Dillé et al.*, 17 Mo. 69; *Union Pac. R. R. Co. vs. Hand*, 7 Kan. 238; *The State vs. Knight*, 19 Ia. 96 to 99; *Cooke vs. Smith*, 54 Ia. 640; *Dun vs. State*, 2 Ark. 229; *State vs. Montgomery*, 8 Kan. 358, Brewer, J.; 24 id. 214, Brewer, J.)

A thorough review and consideration of the authorities upon this question conclusively settles the question of the authority and inherent right in all courts of general jurisdiction to adjourn their sessions over to a distant day and over intervening regular terms in other counties, and then to resume business at the adjourned date, and that such resumed session is but part and parcel of one and the same term. We fully agree with this doctrine and hold the principles fully applicable to the district courts in this territory.

We come now to the consideration of the really important question involved in this case, and that is, whether the petitioner was tried at a term of court and at a time when another term of court in another county of the same district was in session, and the law as applicable thereto.

There is no controversy upon the proposition that the Logan county district court was in session from the 18th to the 28th day of August, 1893, both days inclusive, and that the petitioner was tried between those dates, and that the Hon. E. B. Green, presiding judge, was present during all of said time, presiding

In re Dossett, Petitioner.

over that court, and the only reasons urged by the petitioner why said session of Logan county district court was not a legal term, or session, is, (1) because the court had no power to fix and hold an adjourned term; (2) because the court had no authority or power to fix the time and hold an adjourned session in Logan county after the time had arrived for holding an intervening term in Payne county; (3) because, it is alleged, that the adjourned term of the district court of Payne county was actually in session at the same time that the petitioner was being tried in Logan county.

The first two objections, urged by the petitioner against the legality of his trial, must be decided against him, on the grounds and upon the authority heretofore stated and cited in this opinion.

Let us carefully examine the third ground of objection and see whether it is tenable. The transcript of the proceedings of the Payne county district court, as certified to by the clerk, is before us, and it is stipulated by counsel for the petitioner, and for the government, that it may be considered in evidence by us without objection.

This transcript shows the convening of the court, in regular session for the April term, 1893, on the 18th day of April, 1893, the Hon. E. B. Green, judge of the First judicial district, presiding; and further shows, that on the 5th day of May, 1893, the Payne county district court was, by order of the court and proclamation of the court crier, duly adjourned until Tuesday, August 1, 1893, at 10 o'clock A. M. The record fails to show the presence of any officers of the court on said date, or that the court convened at all, nor does it show by whose order the further adjournment was taken, to Tuesday, August 15, 1893. Under the authorities it will not do to say that the failure of a judge to attend and open court on a day to which it has been adjourned, after having been regularly con-

vened on the day fixed by law, will result in the loss of the term, and, that, hence, the failure of Judge Green to be present in Payne county on the 1st day of August, 1893, operated as a loss of the term in that county. This question must be determined from a different standpoint. The transcript further shows that on August 1, 1893, court was adjourned in the same indefinite manner to August 15, and on August 15 to August 21; on August 21, to August 23; on August 23, to August 29, and that on August 29 the judge and all the officers were present. On September 1, court was adjourned to November 7, 1893, which was the first day of the next regular term for Payne county.

We are unable to say that after a session of court is once regularly convened, on the day fixed by law, that it can expire in any manner, except by adjournment *sine die* or by operation of law. This is the rule, and is too well settled to admit of controversy. In what manner can a session of court expire by operation of law if not adjourned *sine die*? Will the failure of the judge to attend on a distant day, to which said court is adjourned, lose the term? We think not. The Payne county court was theoretically in session until the first day of the regular term following in that or another county, on the theory that a court is in session from the date of convening, on the day fixed by law, to the first day of the regular term following in the district, unless adjourned *sine die*, The transcript cuts no figure except to disclose that the term was not adjourned *sine die*, and if not, its period of duration lasted until the first day of the regular term following. This branch of the subject is ably discussed in *U. P. R. R. Co. vs. Hand*, 7 Kas. 386, Kingman, C. J; Brewer, J. concurring; Valentine, J. not sitting. Some of the reasoning will be instructive here:

" A question is raised *in limine*, of considerable importance. The facts necessary to understand it are these: The verdict in the case was returned, and judgment entered thereon, on Saturday the 5th of December, and at the close of the day the court adjourned to Monday, the 7th; but neither on Monday, the 7th, nor on Tuesday, the 8th, was any court held, the district judge being absent. On the 8th of December the motion for a new trial was filed with the clerk. On the 9th. the judge having reached Lawrence, the court was opened, and the motion for a new trial was heard and overruled, and time given to make a case; and that case so made raises all the questions, but one, made in this court. It is insisted by defendant in error that all the proceedings had on Wednesday, the 9th, were *coram non judice*, and present no basis on which the court can act. The record shows that on Monday, the 7th, and on Tuesday, the 8th, the court was adjourned by the sheriff, the order reciting the absence of the judge being detained by a severe storm. Section 719, of the civil code, is referred to as sustaining the correctness of the action of the sheriff. This section seems clearly to refer to the beginning of a term, and therefore is not applicable to this case. It was inserted for the sole purpose of saving the term if the judge was detained from the place for any cause. ( *Thomas vs. Fogarty*, 19 Cal., 644; *People vs. Sanchez*, 24 Cal., 17.) By common law a failure to open court on the first day of the term wrought a loss of the whole term. (*People vs. Bradwell*, 2 Cow., 445.)

"The great inconvenience arising from this principle early led to its correction by legislation. Accordingly the English parliament in the 3 George IV, 18, made provision that the court might be opened at some day subsequent to the first day of the term, and that all records and proceedings should be made up as of the first day of the term; (2 Bac. Ab., title courts, p. 714); and our examination has shown that similar laws have been passed in many of the states. This section of our code having only reference to the beginning of the term, the act of the sheriff in adjourning the court, was simply a nullity. Yet we do not think that the term was lost by the adjournment of

the court on Saturday till Monday, and its not con-
vening till Wednesday. The term of the court is fixed
by law. Having once opened, it so contines till the
term expires, or an adjournment *sine die* is made. The
adjournment from day to day does not suspend its
functions. After the court has adjourned for the day,
it is a common practice for grand juries to continue
their sessions, swear witnesses, pursue their investi-
gations, and find bills; and petit juries frequently
remain out all night in deliberation, and make up
their verdicts, while the journal shows that the court
has adjourned. Each of these juries is part of the
court, performing important functions; and the court
is always in session in fact, so that it can protect the
juries, and enforce proper conduct on their part. 'For
all general purposes the court is considered as in ses-
sion from the commencement till the close of its term.'
(*Barrett vs. The State*, 1 Wis. 175). In the case just
cited, the court had adjourned till the next day, and
some hours after the adjournment, and before the next
day had begun, received a verdict in a crimnal case,
which was held good, on grounds that necessarily
cover the case under consideration. At common law
the whole period of a term was looked upon as a sin-
gle day, and everything done at the term was regarded
as done of that day. We need not point out what
innovations our statutes have made on this doctrine,
but nowhere find it entirely abrogated. The statute
still makes judgment liens revert to the first day of
the term at which the judgment is rendered. There
is an evident purpose on the part of the courts to so
construe the law, if possible, as will uphold the
sessions of courts actually doing business. (See
*Womack vs. Womack*, 17 Texas, 1; *Cook vs. Skelton*, 20 Ill.
106; *Jones vs. State*, 11 Ind. 357). In this case, we find
there present the judge, the clerk, and other min-
isterial officers, at the time and place where it is by
law authorized to be held, properly organized at the
beginning of the term, and performing the functions
of a court. This must be held to be a court legally
constituted, and fully authorized to transact business.
(2 Bac. Ab. 6, 16, title courts). This conclusion makes
it necessary to examine the various questions raised
in the record."

In *State vs. Montgomery*, 8 Kan., 358, Brewer J., the question is discussed as follows:

"Upon that day, then, the regular term of court in Anderson county commenced. Upon that day, too, it is plain the term of the district court of Douglas county, by necessity closed; for it is said that the court is considered in session from the commencement to the close of the term, and if the term did not close in Douglas county at the time it commenced in Anderson, there would be, two terms of the district court in session in the same district at the same time, doing business and trying cases, with but one district judge. It does not appear from the record that there was practically any such difficulty as that suggested; or that the judge of the district court was attempting the physical impossibility of ᴧ personal presence in Garnett and Lawrence at the same time, or even that the judge *pro tem.* was engaged in holding court in Douglas on the same day that the regular judge was holding court in Anderson county—a question. by the way, which may involve consideration very different from that presented by this record. So far as appears here, (for we cannot presume difficulties and collisions when none are shown), the district court of Douglas county was adjourned, by order of the judge, from a day prior to the commencement of the regular term in Anderson county to a day subsequent to its close. Was such adjournment *ultra viries*? and did the term lapse notwithstanding such order? This is a naked question. The legislature has named the day for the opening of a term but have not for the closing. That is confided to the discretion of the judge, and is determined by the amount of business and the necessity of suitors. By § 10 of the amendment to the code of civil procedure, in 1870, (Laws 1870, 174), actions are, 'triable at the first term of the court after the issues therein, by the time fixed for pleading are, or should have been, made up ten days before the term.'

"It may often happen that the time is insufficient to dispose of all the triable actions in one county before the day fixed for the commencement of the term in another. Has the law given to a party the right to have his case tried at a given term, and at the same time denied the court power to secure that right? Again,

§ 10 of the acts concerning district courts (Gen. Stat. 308), provides that the 'judges of the several district courts shall have the power to hold such special and adjourned terms in any county in their respective districts, as they may deem necessary.' For special terms notice is required; but for an adjourned term, a simple order adjourning the court to a given time is all that is necessary. A special term is a separate, independent term. An adjourned term is but a continuation—a part of the regular term. Giving the district court power to hold an adjourned term, gives it power, not to adjourn from day to day, but to adjourn over a length of time, over intervening obstacles to the holding of court. It seems to contemplate just such an exigency as the present, where the business in one county is incomplete and yet the day fixed for the commencement of the term in another has arrived. The time of such adjournment is not restricted, unless it is deemed to be, by the commencement of the succeeding regular term in that county. Being but a continuation, a part of the regular term, the unfinished business may be completed, bills of exceptions signed, etc. Again, while it is true there is a sense in which it may be said that the court is considered in session from the commencement to the close of the term, and this theoretical continuity involves the presence in the county of all the officers of the court, including the judge, yet there is a practical limit to the application of this doctrine, beyond which an attempt to carry it involves a manifest absurdity. Supposing that a judge holding court in some adjoining county, during the present week, should adjourn for a day and come here to attend the state fair, and that during that day an exigency should arise in his county which demanded the immediate exercise of the restraining power of an injunction, to whom shall the application therefor be made? By § 239, of the civil code, the district judge, 'or in his absence from the county, the probate judge,' may grant an injunction. Now, by the strict theory of the continuity of the term, the district judge is present in the county, and therefore the probate judge has no jurisdiction. As a matter of actual fact he is absent from the county, and therefore the probate judge has jurisdiction. Unquestionably, the

latter view is correct, and illustrates a practical limitation to the idea of the continuity of the term. We conclude, then, that the adjornment of the district court from the 9th to the 24th of March was not *ultra viries*, that the term did not lapse on the 13th of March, and that the bill of exceptions is a part of the record, and that the errors alleged in it are proper subjects for our consideration."

Under these authorities and the law as we understand it, our determination is this: While the Payne county court was theoretically in session, as illustrated in *State vs. Montgomery*, yet the actual fact is that Judge Green was at Guthrie, Logan county, during the period from August 18 to August 28 inclusive, trying John Dossett for murder. The transcript shows this. He was not 'attempting the physical impossibility of being personally present at both places at the same time.' The fact that an adjournment was taken, or attempted, in Payne county, from time to time, makes no difference. Had August 1 or any of the previous dates upon which adjournments were attempted or taken, been the first day of a regular term, under the authority of the *Terrill* and *McClaskey* cases (Vol. 34, Pac. Rep., 457-459,) the term on August 1, or any of those prior thereto, when the judge failed to attend, the term would have been lost, or, under the law as it is now, (§ 4626, Statutes of 1893,) a failure to comply with the statutory requirements on the first and second days of the term, the same result would have followed, but where the term had regularly opened and was legally in session, neither of these rules would apply.

We think that "theoretical session" of the Payne county court, illustrated in *State vs. Montgomery*, by the learned justice delivering the opinion, applies with peculiar force to this case, and is not such session of court as the law contemplates to interfere with the regular and lawful transaction of business in Logan

county.   The transcript shows nothing more than the adjournments, and for these the presence of the judge was not essential, after the court was once opened regularly according to law.

We hold the Logan county term to have been legal, and that the alleged sessions of the Payne county court were not such as are contemplated in the observance of the rule, that two courts cannot be in session in the same district at the same time.   We are not yet ready to concede the question as to whether, under the law as it now exists in this territory, since the act of congress of December 21, 1893, and some very respectable late authority, that even this cannot transpire legally.

Viewing the law as we do, the application and writ for the release of the petitioner will be denied.

By the court; it is so ordered.

All the Justices concurring.