ROBERT L. VENCILL, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 15, 1908.

1. CARRIERS: Damage: Notice: Waiver: Intention. Ordinarily a waiver should be made within the time limit for giving notice of loss, but evidence is admissible to show an intention to waive after the limit of such time; and the evidence in this case supports such intention.

2. ————: Delay: Negligence: Evidence. Causes that will excuse unusual delay in forwarding a shipment are those that cannot be reasonably anticipated, controlled or avoided, and the evidence fails to show such in this case.

3. ———: Delivery: Unloading Place: Evidence. Under the evidence, *held*, the carrier did not deliver the cattle at the unloading place but at another place; and the rule in the case of Ratliff v. Railroad, 118 Mo. App. 644, does not apply.

4. ———: Damage: Evidence: Minimizing Loss. One injured by the act of another must use reasonable diligence to protect himself and thereby prevent additional damage; and it is error to refuse evidence tending to show a failure to use such diligence.

5. ———: ———: ———: ———: Trial Practice. Where the court erroneously refused to allow a witness to testify as to certain facts but subsequently allows other witnesses to testify and rules that the evidence is admissible, it is the duty of the party tendering the evidence to recall the witness whose testimony was refused, and if he fails to do so, he cannot complain of the original ruling.

Appeal from Grundy Circuit Court.—*Hon. George W. Wanamaker*, Judge.

Affirmed.

*J. G. Trimble* and *Hall & Hall* for appellant.

(1) To entitle plaintiff to recover, the notice must have been actually received. Smith v. Railroad, 112 Mo. App. 610; McBeah v. Railroad, 20 Mo. App. 445; Brown v. Railroad, 18 Mo. App. 577; Dawson v. Railroad, 76 Mo. 514; Thompson v. Railroad, 22 Mo. App. 326; Boot & Shoe Co. v. Telegraph Co., 49 Mo. App. 99; Crow v. Railroad, 57 Mo. App. 135. (2) There was no waiver of this condition of the contract as to notice. The ten days' notice had already expired at the time the notice was received and the plaintiff could not be misled by any act or statement of appellant or its agents. Hamilton v. Railroad, 80 Mo. App. 601; Mensing v. Insurance Co., 36 Mo. App. 602; Maddox v. Insurance Co., 39 Mo. App. 198; Ratliff Bros. v. Railroad, 118 Mo. App. 644. (3) The court should have sustained the demurrer to the evidence for the reason that there was no evidence of negligence or unnecessary delay in the shipment. Ficklin v. Railroad, 117 Mo. App.

225; McFall v. Railroad, 117 Mo. App. 477; Schwab v. Union Line, 13 Mo. App. 162; Guinn v. Railroad, 20 Mo. App. 459; Dawson v. Railroad, 79 Mo. 300. (4) Mere proof of delay is not proof of negligence. There must be something additional which characterizes the delay as culpable. McCrary v. Railroad, 109 Mo. App. 569; Anderson v. Railroad, 93 Mo. App. 677; Wright v. Railroad, 118 Mo. App. 555; Ecton v. Railroad, 102 S. W. (Mo. App.) 576. (5) In this case the appellant's agent notified the plaintiff at once on the breaking down of the engine and of the probable delay, and advised and requested plaintiff to unload his stock and wait for the next train, or ship his stock over another road, which plaintiff refused to do. Instead of guarding against and trying to prevent the damages as the laws required, he knowingly invited it and cannot recover therefor. Harrison v. Railroad, 88 Mo. 634; Dietrich v. Railroad, 89 Mo. App. 36; Logan v. Railroad, 96 Mo. App. 464. (6) The burden of proof was on the plaintiffs to show that defendant was guilty of the specific negligence charged and the court erred in giving plaintiffs' instructions. Whiting v. Railroad, 101 Mo. 631; 28 Mo. App. 103; Clark v. Railroad, 64 Mo. 440; Chemical Co. v. Lackawanna Line, 78 Mo. App. 305; Crow v. Railroad, 57 Mo. App. 135; Galm v. Railroad. 113 Mo. App. 591; Chitty v. Railroad, 148 Mo. 75: McManamee v. Railroad, 135 Mo. 447; Feary v. Railroad, 162 Mo. 96; Lachner Bros. v. Express Co., 72 Mo. App. 17; Waldhier v. Railroad, 71 Mo. 514; Bartley v. Railroad, 148 Mo. 139; Hite v. Railroad, 130 Mo. 132; Ecton v. Railroad, 102 S. W. (Mo. App.) 576. (7) The trial court erred in excluding the evidence offered by appellant to prove that after the engine broke down, appellant's agent informed and requested plaintiff to unload his cattle and wait until the next train or ship over the Wabash. Appellant had the right and it was its duty to notify plaintiff of the delay in order to pro-

tect itself from liability on account of the delay. Schwab v. Union Line, 13 Mo. App. 162; Guinn v. Railroad, 20 Mo. App. 459; Dawson v. Railroad, 97 Mo. 300; Chambers v. Board of Education, 60 Mo. 379.

*Hugh C. Smith* for respondent.

(1) The contract provides return transportation will not be given. · This is against positive law. R. S. 1899, sec. 1085. Therefore the written contract became a mere bill of lading and no notice was required. Ficklin & Sons v. Railroad, 115 Mo. 637. (2) But the question of necessity of notice in this case is immaterial. It was waived by the general freight agent's asking time to investigate, for further information, by his failure to object on the ground of no notice, and his consideration of the claim on its merits. McFall v. Railroad, 117 Mo. App. 484; Summers v. Railroad, 114 Mo. App. 452; Ratliff Bros v. Railroad, 118 Mo. App. 645; 5 Am. and Eng. Ency. Law (2 Ed.), pp. 455, 456, 457. (3) It is immaterial whether the correspondence with appellant's general freight agent, in order to constitute a "waiver" was within or beyond the ten-day limit. No claim is made here that appellant did anything within the ten days to mislead respondent or to cause respondent to believe that notice would not be required; but waiver is claimed in this case upon the subsequent correspondence and conduct of appellant's general freight agent, which shows conclusively that the claim was considered upon its merits, thus showing that the notice was either actually received by him within the ten days; or that the requirement as to notice was "treated by defendant as of no importance," and the clause in the contract so providing rescinded. Rice v. Railroad, 63 Mo. 322; Harned v. Railroad, 51 Mo. App. 488; LaForce v. Insurance Co., 43 Mo. App. 528; Dezell v. Fidelity & Casualty Co., 176 Mo. 266; McComas v. Insurance Co., 56 Mo. 573; Bush-

nell v. Railroad, 118 Mo. App. 628; Stipel v. Insurance
Co., 55 Mo. App. 224; Fink v. Insurance Co., 60 Mo.
App. 673; Hamilton v. Railroad, 80 Mo. App. 597; Hess
v. Railroad, 40 Mo. App. 206; Livery Co. v. Railroad,
113 Mo. App. 149; Ingwerson v. Railroad, 116 Mo. App..
151; Jones Bros. v. Railroad, 117 Mo. App. 527; Bank
v. Railroad, 119 Mo. App. 14; Ward v. Railroad, 158
Mo. 226; Wright v. Railroad, 118 Mo. App. 392; Leonard
v. Railroad, 54 Mo. App. 293; McComas v. Insurance
Co., 56 Mo. 573; Livery Co. v. Railroad, 113 Mo. App.
150. (4)· The evidence of appellant's negligence was
sufficient to take the case to the jury, and ample to
sustain the verdict. Sloop v. Railroad, 93 Mo. App. 605.
The breaking down of the engine was a circumstance
which in itself bespeaks negligence, and thus a prima-
facie case was made by such showing. McFall v. Rail-
road, 117 Mo. App. 477; McCrary v. Railroad, 109 Mo.
App. 570; Tucker v. Railroad, 50 Mo. 386; 6 Cyc., p.
443; Gann v. Railroad, 72 Mo. App. 41; Rice v. Railroad,
106 Mo. 371. (5) The question of negligent delay was
for the jury and the evidence warranted the verdict.
Bushnell v. Railroad, 118 Mo. App. 618; Fulbright v.
Railroad, 118 Mo. App. 482; Buffington v. Railroad,
118 Mo. App. 476; Ficklin v. Railroad, 117 Mo. App.
211; Sloop v. Railroad, 117 Mo. App. 204; Klass Comm.
Co. v. Railroad, 80 Mo. App. 164; Crow v. Railroad,
57 Mo. App. 135; Cash v. Railroad, 81 Mo. App. 109;
McCann v. Eddy, 133 Mo. 59; Jones v. Railroad, 89
Mo. App. 653; McFall v. Railroad, 117 Mo. App. 477.

JOHNSON, J.—Plaintiff sued defendant, a com-
mon carrier, for damages alleged to have resulted from
defendant's negligent failure to transport his cattle,
consisting of forty-seven head, from Galt to South St.
Joseph, within a reasonable time. Plaintiff claims the
cattle were received by defendant for shipment at 4
o'clock in the afternoon of December 11, 1904, and

should have arrived at their destination at 10 o'clock or earlier on the same day, but on account of defendant's negligence, they did not arrive until 12 o'clock the next day—too late for the morning market; that he thereby lost the benefit of the morning market and in the afternoon he sold thirty-three head of the cattle, at which time the market had declined; that he was unable to sell all of said cattle on that day, but was compelled to keep fourteen head which were sold on the market the following day, the price in the meantime having further declined; that owing to the careless manner in which the cattle were transported, they were bruised and depressed which produced a shrinkage in weight, thereby causing plaintiff additional loss; and, further, that he was subjected to the expense of feeding the cattle that were not sold the day of arrival.

The answer was a general denial and the further defense that plaintiff shipped his cattle over defendant's railroad under the terms of a certain written contract (attached to and made part of the petition), the terms of which plaintiff failed to keep and perform, and that any damages which may have been sustained were caused by plaintiff's own negligence and lack of care and attention to said cattle. Further, it was claimed that plaintiff failed to give to defendant notice of damages as required by the terms of the contract. To this answer plaintiff replied by a general denial.

It appears from the evidence that the cattle were loaded between 5 and 6 o'clock in the evening of the day mentioned and the train that was to take them arrived at Galt about 7 o'clock. The cars in which they were loaded were placed therein and the train pulled on to the main line. The train was what is called a "double-header," i. e., drawn by two engines. In putting these cars in the train and switching, the end sill of one of the engines was broken, which dis-

abled the front drawbar so that it became unsafe to use the engine. The employees of defendant telegraphed to Milan for another engine which came in time for the train to start about 11:30 p. m. The night was stormy and enough snow fell to retard the progress of the train. Some time was lost at Pattonsburg and the train did not reach Osborn until about 8 o'clock the next morning, when the cattle were switched to the Hannibal & St. Joseph railroad, reaching the Burlington station in South St. Joseph about 10 o'clock a. m., and being delivered to the stock yards company about one hour and a half thereafter. They were received by plaintiff's consignees about 12 o'clock, were put upon the market, thirty-three head sold that day, and the remaining fourteen head held over and sold the next day.

The evidence tended to sustain plaintiff's allegation of damages in the most important particulars and, further, to show that the injury to the engine was occasioned by a defect in the timber or by striking too hard in coupling. There was no positive proof that the damaged engine had been inspected before it left Milan. The evidence of defendant tended to show that owing to the condition of the track caused by the snow, eight hours would have been a reasonable time for the train to have arrived at St. Joseph after it left Galt. There was a controversy at the trial as to whether plaintiff had given defendant proper notice of the injury to his stock. It was shown that Hugh Smith, attorney for plaintiff, mailed such notice in an envelope properly addressed and deposited in the postoffice at Trenton on December 21, 1904, and that in the usual course of transmission, it should have been delivered to the person addressed the next morning. This notice was addressed to the freight claim agent of defendant, but it was shown that it was received by L. F. Moore, the general freight agent, who acknowledged its receipt

on December 25th and asked for further information; and it was further shown that subsequent correspondence was had between said agent and plaintiff concerning the claim. By the terms of the written contract to which reference was made in the answer of defendant, it was provided that "the said railroad company shall in no case be liable for any loss or damage to said animals, unless a claim shall be made in writing by the owner or owners thereof, or his or their agents, and delivered to a general freight agent of the said railroad company, or to the agent of said railroad company, at the station from which the animals are shipped, or to the agent at the point of destination, within ten days from the time the said animals are removed from the cars;" further, it was stipulated: "In consideration of free transportation for — persons, designated by the first party, hereby given by said railroad company, such persons to accompany the stock, it is agreed that the said cars, and the said animals contained therein, are and shall be in the sole charge of such persons, for the purpose of attention to and care of the said animals, and that the said railroad company shall not be responsible for such attention and care."

The jury returned a verdict in favor of plaintiff for $118.16, upon which judgment was rendered, and defendant appealed.

At the close of defendant's testimony and again at the close of all the testimony, defendant offered a demurrer to the evidence which was overruled. This demurrer was offered upon the theory that plaintiff was not entitled to recover because he had failed to prove that he had given to defendant notice of his damages within ten days from the time the cattle were unloaded from the car. It is unnecessary to say that the courts of this State have upheld such contractual provisions as being reasonable and enforcible. But we are not satisfied that plaintiff did not reasonably com-

ply with this requirement of the contract. He mailed his notice at the postoffice in Trenton in time for it to have reached defendant's claim agent at Kansas City within the prescribed limit, in the ordinary course of mail delivery. The evidence of defendant tends to show that, in fact, it was not delivered until December 24th, two days beyond the limit fixed by the contract. The letter of the general freight agent acknowledging receipt did not mention the fact that it had not been received in due time, and it is fair to presume that it was so received, or that such notice was waived. Defendant, however, insists that as this letter of the general freight agent was written after the expiration of the ten days, it was not a waiver.

It has been held in numerous cases that a waiver, to be effective, must be made within the time limited for such notice. [Mensing v. Insurance Co., 36 Mo. App. 602; Maddox v. Insurance Co., 39 Mo. App. 198; Hamilton v. Railway, 80 Mo. App. 597.] There are also other cases in point. But in the last case cited, it was held that a waiver was a question of intention and it was so held in Stiepel v. Insurance Co., 55 Mo. App. 224; Fink v. Insurance Co., 60 Mo. App. 673. It was said in Hamilton v. Railroad, supra, that "acts or declarations happening or made after the time prescribed for the performance of the condition might be shown, provided they had any tendency to prove a previous intention to waive the condition." It was held, however, in that case, that the rule did not apply "for the reason that the defendant in the letters denied all liability which could not at that time be treated as a waiver of anything."

In the case before us, we believe the letter of the general freight agent indicated a previous intention to waive said notice. In a letter to Mr. Smith, attorney for plaintiff, he says: "Will you be good enough to send me the live stock contracts and the account of

sales for the shipment, and advise me in detail how the amount of the claim is arrived at? That is, whether it is based on shrink, decline in market, or rough treatment. If you will be good enough to do this, I will endeavor to arrange an equitable settlement of the claim without delay."

We think the court acted properly in overruling the demurrer, from the facts stated. If the general freight agent had not intended to waive the notice, he should not have offered to negotiate a settlement, but should have stood upon the right of the defendant under its contract. It is clear, there had never been any intention upon the part of the defendant company to deny liability for want of such notice.

The defendant contends that it cannot be held liable for the delay caused by the snowstorm which had the effect of obstructing its tracks, nor for the delay occasioned by the breaking down of the engine. We concede the first proposition, but it was a question for the jury to determine whether the breaking down of the engine was unavoidable, for there was evidence tending to show that this condition was due to the negligence of the employees of the company in making couplings with too much force, or to a defective end-sill. There was no substantial evidence that the disabled engine had been properly inspected before it left defendant's division point at Milan. Frequently it has been said that the only causes that will excuse an unusual delay of a carrier in forwarding a shipment are those that cannot be reasonably anticipated, controlled or avoided by the exercise of reasonable care. [McFall v. Railway, 117 Mo. App. 477; Schwab v. Union Line, 13 Mo. App. 159; Guinn v. Railway, 20 Mo. App. 453; Dawson v. Railway, 79 Mo. 296.]

There was evidence of other unnecessary delays which was properly a subject for the consideration of the jury. There was a stop of unusual length at Pattons-

burg and the stock were kept at a station in South
St. Joseph about one hour and a half before they were
delivered at the stock yards, the place of destination.
It was fairly a question for the jury to say whether,
under all the facts and circumstances of the case, the
delay in the transportation of plaintiff's cattle could
have been avoided by the exercise of proper care upon
the part of defendant. The offer of defendant to show
that it was the invariable custom to have its engines
inspected before they were sent out on the road was
not accepted by the court, but in our consideration of
the question, we have treated it as though that evidence
had been admitted and even conceding that the delay
occasioned by the breaking down of the engine was un-
avoidable, we think there was sufficient evidence of un-
necessary delay to take the case to the jury.

Exception is taken to the action of the court in
allowing plaintiff to prove the length of time it would
take to ship the cattle from Galt to the commission
firm of Sager & Young at South St. Joseph stockyards,
for the reason that the contract was to ship them from
Galt to St. Joseph, consigned to Sager & Young, and
the defendant was in no way responsible for the de-
livery of the cattle to this firm. The evidence shows
that Sager & Young received the cattle in question
from the chutes at the stockyards in South St. Joseph.
It also shows that they received them from the stock-
yards company. This contention seems to be based
upon a ruling in the case of Ratliff Bros. v. Railroad,
118 Mo. App. 644, wherein it is held:

"When the carrier placed the cars at the unload-
ing platforms in a position to be unloaded, and deliv-
ered the billing to the stockyards company, it per-
formed every act required of it as a carrier to com-
plete the delivery and defendant is not liable for dam-
ages that resulted from a subsequent delay caused either
by the failure of the stockyards company to post on

the bulletin board the arrival of the stock or of the consignee to receive it promptly."

In this case, it was shown that the stockyards company received the cattle at the Burlington station in St. Joseph as stated, after a delay of one and one-half hours at said station, but that was not the place of unloading and, consequently, not the place of delivery. The case cited has reference to the unloading of the cattle after they have arrived at the stockyards and, therefore, has no application here. And whether the delay at said station was occasioned by the negligence of the defendant or the stockyards company is immaterial, since it was the duty of the stockyards company, as a part of defendant's connecting line, to deliver the cattle at the place of unloading.

While plaintiff was on the witness stand, counsel for defendant asked him, on cross-examination: "Didn't Ben King (defendant's agent) inform you in the depot there that evening, owing to the delay on account of the breakdown the company would not be able to deliver the cattle into St. Joseph for the market next morning—or might not be able to deliver them into St. Joseph for the market that morning, and that you had better unload the cattle and wait for the train next day?" Counsel for plaintiff objected to the question on the ground that "if such conversation took place after the signing of the contract and after the stock were delivered to the railroad company, that is no consideration for the release of their obligation to transport these cattle to St. Joseph and under the contention of the gentlemen, if the conversation took place before the signing of the contract, would merge in the written contract, and this testimony is incompetent." The objection was sustained, and this ruling is assigned as error. The evidence was admissible for the purpose of showing that plaintiff refused to avail himself of the opportunity to minimize his damages. The

rule is well settled that "it is the duty of a party to protect himself from the injurious consequences of the wrongful act of another if he can do so by ordinary effort and care and at a moderate and reasonable expense, and for such reasonable exertion and expense in that behalf expended he may charge the wrongdoer; and where by the use of such means he may limit and prevent further loss he can only recover such loss as could not thus be prevented." [Field on Damages, p. 19; Dietrich v. Railway, 89 Mo. App. 36.]

One injured by the wrongful act of another must use reasonable diligence to protect himself and thereby prevent additional damage. [Logan v. Railway, 96 Mo. App. 46.] But we find the error was cured in the subsequent proceedings. The agent of defendant was permitted to testify, without objection: "To the best of my knowledge I told Mr. Vencill he had better unload the cattle. He said they were as well off in the car as they would be in the storm in the stockyards. He did not unload them." Later, defendant offered to prove by another witness that "after the accident to the engine occurred, the defendant, by its agent, offered the plaintiff the opportunity to save himself from any damage or any further damage that might have resulted from the delay in the shipment of the stock by offering to allow him to unload his cattle and wait for the train the next day or to take them over to another railroad and ship them out that day." The court ruled: "The position of the court is that you may ask him about the offer to unload his cattle with the object of lessening his damages, but that you can't offer evidence to show that that would release him from the contract of shipment and let him take the cattle off. I admit evidence as to the fact of his offering to unload his cattle to lessen damages." Thus it appears the court finally took the proper view of the law and under the ruling defendant was entitled, if it chose, to recall plaintiff

for further cross-examination and to interrogate him about the offer of the agent to permit him to unload the cattle. As this was not done, defendant is in no position to complain of the preceding refusal to admit the evidence.

The judgment is affirmed. **All** concur.