## ORIN BANKS v. PENNSYLVANIA RAILROAD COMPANY.[1]

May 13, 1910.

Nos. 16,512—(58).

**Reversal of appeal for want of brief — remand for new trial.**
A reversal of an order denying a motion for a new trial, and granting one for failure of respondent to serve a brief, is not res adjudicata; for it

[1]Reported in 126 N. W. 410.

opens the whole case, which goes back for trial upon the same basis that it would have been tried if the district court had granted the motion in the first instance.

### Jurisdiction of foreign carrier — waiver of delay — evidence.

The plaintiff is a nonresident, the defendant a foreign railway corporation, and the subject-matter of the action is the breach of a contract for the carriage of goods, to be performed in Pennsylvania, where the defendant is domiciled. It appeared in the action, without objection, and answered to the merits. Judgment for the plaintiff. *Held*, that the court had jurisdiction of defendant's person and of the subject-matter of the action; that the cause of action was proven substantially as alleged; that evidence offered to show a waiver of plaintiff's failure to make claim for damages within thirty days after the delivery of the goods, as provided in the bill of lading, was competent and sufficient to establish such waiver; and, further, that the findings of fact are sustained by the evidence.

Action in the municipal court of Minneapolis by Orin Banks, doing business as A. M. Banks Sons, to recover $233.90 damages for defendant's negligence in transporting forty-five barrels of cranberries claimed to have been frozen in transit from Jersey City to Pittsburg. The answer alleged that in the bill of lading there was a written stipulation that neither defendant nor any carrier should be accountable for the weight, quantity or condition of the property shipped thereunder; that the plaintiff loaded the goods in the car, and, if any damage resulted, it was caused solely by plaintiff's negligence in loading; that the bill of lading provided: "No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto by causes beyond its control, or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet or decay," and "claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery thereof, no carrier hereunder shall be liable in any event;" and that no claim for damages had been made in writing to the agent before the expiration of thirty days after delivery of the property. The answer further alleged that defendant was a foreign corporation, organized under the laws of the state of Pennsylvania; that no part of its line of railroad extended within

111 M.—4.

the state of Minnesota, and it had at no time acquired or held property in Minnesota; that none of the transactions alleged occurred within the state of Minnesota; and that the court had no jurisdiction of the cause of action.

The reply alleged that if claim of loss was required to be made within any specified time, defendant waived compliance therewith in this, that on January 22, 1902, plaintiff prepared a statement showing the amount of loss sustained to the cranberries by reason of their being frozen and damaged, and attached thereto written statement of the sales and expenses in the disposition of the berries in Pittsburg, together with the original paid freight bill and certain other papers customarily attached to similar statements of loss, and presented the same to the freight claim agent of defendant, which papers were received by the freight claim agent, investigated on the merits, and declined for the reason, as it claimed, that it had been guilty of no negligence in handling the cranberries. Plaintiff further alleged that defendant voluntarily on March 9, 1906, in a general appearance served upon plaintiff's attorney a general demurrer to the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action.

The case was tried before Charles L. Smith, J., who made findings of fact and as conclusion of law ordered judgment in favor of plaintiff for the sum of $195.65. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

*Savage & Purdy,* for appellant.

*George C. Stiles* and *H. R. Hewitt,* for respondent.

START, C. J.

Action brought in the municipal court of the city of Minneapolis to recover damages to forty-five barrels of cranberries, alleged to have been frozen by the negligence of the defendant while they were in transit over its railway lines from Jersey City to Pittsburg. It does not appear from the record how, if at all, the summons was served on the defendant; but it does show that the defendant appeared generally and answered to the merits without objection, except that it concluded its answer to the merits with allegations to the effect that

the defendant was a foreign corporation domiciled in Pennsylvania, with no part of its line or other property in this state; that the defendant was not a resident of this state; that the alleged cause of action did not arise or accrue therein, and that the court has no jurisdiction thereof.

The cause was tried by the court without a jury, and findings of fact made to the effect following: The defendant during the times stated in the complaint was, and is, a foreign railway corporation having its principal place of business in Philadelphia, Pennsylvania. The plaintiff during such time was not, nor has he since been, a resident of the state of Minnesota. On December 13, 1901, the plaintiff, by and through a connecting carrier, delivered to the defendant at Jersey City forty-five barrels of cranberries, in good condition and free from frost, to be transported over the defendant's railway line to Pittsburg and there to be delivered to the plaintiff's consignee. The defendant accepted the cranberries, but negligently delayed their transportation, and negligently exposed them to the elements, whereby they became frozen, and thereby depreciated in their market value in the sum of $195.65. The plaintiff did not make any written claim for damages or loss on account of such shipment within thirty days next after the delivery of the cranberries to him at Pittsburg, as required by the terms of the written contract of the parties, the bill of lading. The defendant, however, upon receiving such claim, made and sent to it after the expiration of the thirty days, and thereafter investigating it upon the merits, declined to pay it, for the alleged reason that it was not responsible for the temperature and resulting damages.

Judgment was ordered and entered upon the findings for the plaintiff for the amount of his damages, with interest and costs, from which the defendant appealed.

1. The first contention of the defendant to be considered is that the law of the case was settled in favor of the defendant upon a former appeal herein by it from an order denying a new trial, which was reversed and a new trial granted, pursuant to rule No. 14 of this court, for the failure of the respondent to appear or to file a brief.

It was held in Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401,

that where, upon appeal from an order denying a motion for a new trial, the order was affirmed under rule No. 14 for failure of appellant to serve a paper book and brief, all questions which might have been raised on the appeal were res adjudicata and could not be considered on an appeal from the judgment. The reason for this doctrine is quite obvious. An appellant cannot, except by leave of court or consent of the respondent, avoid a decision on the merits; hence the failure of the appellant to assign errors and serve his brief containing the points and authorities upon which he relies for a reversal is by virtue of the rule a waiver of all errors, at the election of the respondent giving him a right to a judgment finally disposing of all matters involved in the appeal. Any other construction of the rule would enable the appellant, by his neglect to comply with the rule, to do that which he had no right to do—to deprive the respondent of his right to a speedy judgment on the merits by holding up the case pending the appeal from the order without a decision on the merits, and then, when the judgment is finally entered, appeal from it at any time within six months.

Where, however, an appeal from an order denying a motion for a new trial is dismissed, it does not prevent the appellant from raising any question on appeal from the judgment which he could have raised if the appeal from the order had never been taken. The dismissal of an appeal leaves no basis for a decision by this court upon the merits, for the dismissal takes the case out of court. Adamson v. Sundby, 51 Minn. 460, 53 N. W. 761.

The question as to the effect of a reversal, on motion of appellant, for failure of the respondent to serve and file his brief, has never been directly passed upon by this court. It is true that, upon the reversal on its merits of any order denying a motion for a new trial, all matters passed upon by the appellate court as the basis of its judgment of reversal are res adjudicata; but this court has never held that all other questions raised by the appellant's assignments of error were res adjudicata in his favor. Any such rule would lead in many cases to flagrant injustice. The reason for the rule as to the effect of an affirmance does not apply to a reversal; for the relation of the appellant to a case in this court is materially different from that of the

respondent. The presumption is that the order or judgment appealed from is correct, and the burden is on the appellant to show error. If none is shown, an affirmance follows, except in the exceptional case provided for by the rule, which permits the appellant, if he so elects, to apply for a reversal, without any showing of error, for the failure of the respondent to serve and file his brief. It is for this reason only that the reversal follows. We accordingly hold that a reversal of an order denying a motion for a new trial, and granting it for failure of respondent to serve and file a brief, is not res adjudicata; for it opens up the whole case, which goes back for a trial upon the same basis as it would have been tried if the district court had granted the motion in the first instance. It follows that the former appeal did not establish the law of this case.

2. The next contention of the defendant is that the trial court had no jurisdiction of the subject-matter of the action. If this is correct, then the question of jurisdiction was not waived by appearing and answering to the merits, and the question can be raised at any stage of the proceedings. The subject-matter of this action is the breach of a contract for the carriage of goods, between the plaintiff, a non-resident of this state, and a foreign corporation domiciled in Pennsylvania, where the contract was to be performed. The contention of the defendant is, in substance, that a foreign corporation is the creature of the local statutes of the state in which it is organized, and that courts of another state have no control over it, except as it is brought within the purview of its statutes; that our statutes (R. L. 1905, §§ 2888–2890, providing on what terms a foreign corporation may do business in this state, and R. L. 1905, § 4109, subd. 3, 4, providing for the service of summons upon a foreign corporation) must be construed as only authorizing such actions in this state, against such a corporation by service of summons on its agents, as originate in this state, or are based on contracts entered into in this state, or with reference to a subject-matter within this state, or on contracts to be performed within this state. Statutes similar to our own have been so construed by the courts of several other states. There is, however, a conflict of judicial authority on this question. 19 Cyc. 1340, 1341; 13 Am. & Eng. Enc. (2d Ed.) 897.

We are, however, of the opinion that the question of the construction of the statutes referred to is not presented by the record; for we have reached the conclusion that, when the defendant appeared generally and answered to the merits, jurisdiction of the court over the defendant and the cause of action was complete. It may be conceded, as claimed, that the courts of this state have no jurisdiction over a foreign corporation, except as it is brought within the purview of our statutes; but it is equally true that such a corporation may voluntarily appear by attorney and submit its person to the jurisdiction of the courts of the state, precisely as it may by attorney come into such courts for the purpose of enforcing its claims. In either case it submits itself to the jurisdiction of the courts.

But it is urged that the question of jurisdiction relates, not merely to jurisdiction over the person of the defendant, but also over the subject-matter of the suit. It was so stated in the case of Smith v. Mutual, 14 Allen (Mass.) 336; but in Johnston v. Trade Ins. Co., 132 Mass. 432, it was held that a nonresident might maintain an action in the courts of that state against a foreign insurance company, doing business there, upon a contract made, and the subject-matter of which was situated, in another state, although the service of process was made only on the insurance commissioner. In the case at bar the cause of action does not depend upon any local statutes; for it is a personal, and transitory, common-law action, the subject-matter of which is within the general jurisdiction of the common-law courts of this state. If the parties to the action were both natural persons, the plaintiff, although both were nonresidents, and the contract was made and was to be performed in another state, would have, at least in the absence of any statute forbidding it, the right to maintain the action in the courts of this state, if he could find the defendant within the state. Barrell v. Benjamin, 15 Mass. 354; Peabody v. Hamilton, 106 Mass. 217.

The fact that the defendant is a foreign corporation, an artificial person, does not affect the jurisdiction of the common-law courts of this state over the subject-matter of the action. Where, however, the only way in which the court can or does obtain jurisdiction over the person of a foreign corporation is by virtue of the statute au-

thorizing service of process upon its agent, but which limits, expressly or impliedly, the right so to serve the process to a certain class of actions, the court acquires no jurisdiction to proceed to judgment in the action, unless it belongs to the particular·class of actions in which the statute authorizes service of process on an agent. This, and only this, is what is to be understood by the statement made by some courts that the question of jurisdiction in such cases extends both to the person of the defendant and the subject-matter of the action. If, then, the jurisdiction of the court in this case depended upon the service of the summons on the defendant's agent, and the defendant had appeared specially and moved to set aside the service and to dismiss the action for want of jurisdiction, as was done in the cases cited by defendant, the record would authorize and require us to construe the statute and determine whether this action belongs to the class of actions in which jurisdiction of a foreign corporation may be obtained by service of the summons on its agent. The record simply presents a case where a foreign corporation voluntarily comes into court and answers to the merits in a common-law transitory action. We accordingly hold that the trial court had jurisdiction both of the person of the defendant and the subject-matter of this action.

3. The defendant also urges that the cause of action proven, if any, is not the one alleged in the complaint, and that there is a material variance. The complaint alleged a delivery of the cranberries to defendant by the plaintiff at Jersey City. The proof was that they were delivered in good condition to a connecting carrier at Darby, Massachusetts, and transported by it and delivered to the defendant at Jersey City. The evidence justifies a finding that the cranberries were delivered by the connecting carrier on behalf of the plaintiff to the defendant at Jersey City, and that they were, when so delivered, in good condition. We are of the opinion that there was no material variance.

4. The further contention is that no claim for damages was made within thirty days after the delivery of the cranberries as provided by the bill of lading. Such was the case; but the court found, as a fact, a waiver of such notice within the time limited. This finding is assigned as error, because the evidence relied upon to prove it was

incompetent and insufficient to support the finding. The plaintiff produced and identified a letterpress copy of a letter dated January 22, 1902, directed to "Pennsylvania R. R. Co., Freight Claim Dept." He testified that the original was so directed and mailed, with postage paid; that he wrote no other letter to the defendant, dated January 22, 1902; that there was inclosed with the letter a statement in detail of the plaintiff's claim for damages to the cranberries. On his cross-examination he testified that he had no personal recollection as to who mailed the letter. This letterpress copy, and a letter, signed "F. D. Howell, Freight Claim Agent," and headed and dated as follows:

"The Pennsylvania Railroad Co.,
"General Office, Broad Street Station,
"Philadelphia, Nov. 7th, '03.
"Office of the Freight Claim Agent,
3139 M.

"Messrs. A. M. Banks' Sons,
"115 Warren St., New York, N. Y."—

were received in evidence over the defendant's objections. The objection to the letterpress copy and inclosures was in these words: "We object to this on the ground of no sufficient foundation laid, for the reason that there is no sufficient proof of mailing to the defendant, or of their receipt by the defendant. I do not make the objection that there is no sufficient proof of their correctness as secondary testimony."

The letter and defendant's answer thereto furnish sufficient evidence that the plaintiff's letter was both mailed and received by the defendant. The objection to this reception in evidence of the defendant's letter, purporting to have been written by its claim agent, Howell, is that there was no proof of his signature or his authority. As to the signature the plaintiff testified as follows: "Q. Have you had any correspondence with Mr. Howell, the freight claim agent, with regard to any other claims, other than this? A. Yes, sir. Q. And are you familiar with his signature? A. I am not very familiar with his signature. Q. Have you received letters from him in answer to communications addressed by you to the Pennsyl-

vania R. R. Co.? A. Yes, sir. Q. And do you recognize that signature as his? A. Yes, sir." This, in consideration with the fact that the agent's letter was in response to one sent to the defendant, and purports on its face to be the defendant's answer to the plaintiff's claim, constituted prima facie evidence of the genuineness of the agent's signature, and of his authority. 1 Wigmore, Evidence, § 702, subd. b. The letters were properly admitted in evidence.

This brings us to the question whether the evidence is sufficient to sustain the court's finding that the defendant waived any defense which it might otherwise have had by reason of the fact that no claim for damages was made until more than thirty days after the delivery of the cranberries. The evidence consists of the correspondence to which we have referred. The letter of the defendant, in response to the claim of damages, acknowledged the receipt of the claim, and advised the plaintiff that it had thoroughly investigated it, and found that it was not liable, for the reason that: "The carriers are not responsible for the temperature, and for damage to property thereby. Had we received notice of the contract to carry the shipment in a refrigerator car, and failed to provide such car, the matter would be on a different footing. Such not being the case, however, I can only decline payment of your claim. * * *"

The limitation upon the plaintiff's right to prosecute the action within the time given by law was intended to enable the defendant to intelligently investigate the merits of a claim for damages while the evidence was accessible. The defendant, in the absence of evidence to the contrary, is presumed to have known when it delivered the cranberries. By its letter it admitted that the claim was received in time to make such investigation, and it advised the plaintiff that it had done so, and had found that it had incurred no liability on account of the shipment, and therefore declined to pay the claim. The finding that the defendant waived the failure to assert the claim within thirty days is sustained by the evidence. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 104, 106 N. W. 485.

The other assignments of error urged in defendant's brief have been considered. We find no reversible error in any of them.

Judgment affirmed.