## ST. LOUIS & S. F. R. CO. v. JAMES et al.

No. 1307.     Opinion Filed November 26, 1912.

(128 Pac. 279.)

1.    COURTS—Terms—Effect of Adjournment. Where a general term of court has been once regularly convened, on the day fixed by law, it can expire only by operation of law, or by an adjournment sine die; and where court has been so regularly convened, and has been adjourned to a day further on in the term, the

failure of the judge, on account of sickness, to appear and hold a session on the day to which an adjournment has been taken, does not result in the loss or lapse of the term.

2.    SAME—Legality of Decision. A district court was regularly convened for general purposes, at the time and place fixed by order of the Supreme Court, and continued in session from the 30th of November until the 18th of December, when an adjourn-ment was taken to the 21st of December, at which time the judge was unable, because of sickness, to appear and open and hold a session of court. On the 28th of December, a day within the limits of the term of court as fixed, the judge appeared and held a session of the court, trying a case, previously assigned regularly for trial on that date. Held, that the court was legally constituted and that its proceedings and judgments are valid.

3.    CARRIERS—Carriage of Live Stock—Limitation of Liability— Waiver. A stipulation in a contract for the shipment of live stock limiting the liability of the carrier or fixing the time and manner of giving notice or presenting claims may be waived by the carrier impliedly, by conduct, as well as expressly.

4.    SAME—Actions—Questions for Jury. Where there is evidence tending to show that the freight claim agent of a common carrier receives a claim for damages to a shipment of live stock after the time limited by a provision of the shipping contract requiring notice, which has not been complied with by the shipper, has ex-pired, treats it as a pending claim, and rejects it on other grounds, the question of whether it was the intention of the carrier to waive the notice clause as a defense is a question of fact to be submitted to the jury.

5.    SAME—Limitation by Contract. The clause in a contract for the shipment of live stock, limiting the time within which an action for damage to stock shipped thereunder may be brought to a period of six months after the cause of action has accrued, is invalid and will not be enforced.

(Syllabus by Brewer, C.)

*Error from District Court, Jackson County;
J. T. Johnson, Judge.*

Action by A. M. James and others against the St. Louis & San Francisco Railroad Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff in error.

*Everett Petry,* for defendant in error.

Opinion by BREWER, C. This is a suit for damages for loss of weight, grade, and market, growing out of a shipment

of twelve car loads of beef cattle shipped on the 15th day of March, 1907, and is based on negligent handling and delays upon the part of the carrier. The defendant in its answer, after an admission of its corporate existence, the receipt of the cattle as alleged, and a general denial of the remainder of the petition, sets up four separate written contracts of shipment, and alleges three separate defenses based thereon. These defenses are based on paragraphs 4, 7, 11, and 14 of the written contract of shipment. Paragraph 4 provides against liability for failure to ship, or deliver at any particular time or at any particular market, and for delays caused by storm, failure of machinery, etc. Paragraph 11 requires, as a condition precedent to the recovery of damages for the delay, loss, or injury to the shipment, that a notice in writing be given to certain officers of the carriers, therein specified, within one day after delivery of the stock at destination. Paragraph 14 is a limitation upon the time for bringing suit. The reply admits the execution of the contracts pleaded in the answer, but seeks to avoid the force of same by alleging that they were based upon an unreasonable and illegal consideration, and further that plaintiffs were compelled to accept the terms in the contract in order to make the shipment, inasmuch as the only other rate offered the shipper was a prohibitive one. The reply further pleads a waiver of the contract provisions respecting the giving of the written notice of damage, and further that the provision limiting the time of bringing the action is contrary to law and void, but, even if valid, that it had been waived by the carrier by its action in holding the claim sued on under advisement and pending settlement, until the time of bringing suit named in the contract had expired. The reply was verified. On the issues thus presented, the cause was tried to a jury on December 28, 1908, and resulted in a verdict and judgment for plaintiff in the sum of $1,000.

We gather from a reading of plaintiff in error's brief that it relies for a reversal upon the four following general propositions: (1) That the judgment is void because the term of court had lapsed by operation of law at the time of its rendition. (2) Refusal of the court to instruct the jury that the

failure to give the notice of the damages as provided in the contract was a bar to recovery. (3) Failure of the evidence to show a waiver of the notice relative to damages, and the admission of incompetent evidence tending to show such waiver. (4) Excessive damages.

We will consider the points made in their order.

At the former hearing of this case we were of the opinion, and so held, that, at the time this judgment was rendered, the term of court had lapsed by operation of law, and that the judgment was therefore *coram non judice* and void; but, from the petition for rehearing and the briefs supporting the same, we have been led to believe that in our former opinion we had overlooked controlling decisions, and therefore arrived at an erroneous conclusion.

Upon this point the record shows the following state of facts: Upon the calling of the cause for trial December 28, 1908, the carrier objected to the jurisdiction of the court to proceed with the trial in the following language:

"Now comes the defendant and objects to proceeding at this time for the reason and upon the grounds that the November, 1908, term of this court has expired, and that there is at this time no term of court at which the proceeding may be had, and upon that motion and objection the defendant desires to call testimony."

The record and proof introduced on this point showed the following:

"The regular November term of the district court of Jackson county was fixed by order of the Supreme Court to begin on the 30th day of November, 1908, and may continue to and including December 31, 1908."

Later by order of the Supreme Court said term was extended "so as to continue to and include the 9th day of January, 1909." The clerk of the court, testifying from the records, showed the following orders as to adjournment:

"December 18, 1908, court then adjourned by proclamation of the sheriff until Monday (December 21st), 1908, at 10:00 o'clock a. m."

With no intervening orders it is further shown:

St. Louis & S. F. R. Co. v. James et al.

"December 21, 1908. Now on this 21st day of December, 1908, at 10:00 o'clock a. m. Hon. J. T. Johnson, judge, did not appear to open court for the reason that he was sick and unable to attend, and after waiting until 11:00 o'clock a. m. of said day and the judge still did not appear and the sheriff by proclamation adjourned court until Monday, the 28th, 1908, at 10:00 o'clock a. m."

The clerk further testified that the judge of the court was not present when said order was made. On December 28, 1908, the judge appeared and opened court and tried the case. The protests of counsel, as above shown, were based on purely legal grounds; it not being contended that any prejudice, inconvenience, or state of unpreparedness had resulted from the situation.

It is not disputed that the regular judge opened the regular November term of court on the first day of the term, November 30, 1908, and that the same was in regular session up to and including December 18th, when it was regularly adjourned to the 21st. On the 21st, sickness prevented the judge from being present to proceed with the business of the court. The sheriff proclaimed an adjournment from the 21st to the 28th. This he had no right to do, and his action in so doing is a mere nullity. *Railway Co. v. Hand*, 7 Kan. 380; *Thomas v. Fogerty*, 19 Cal. 644; *People v. Sanchez*, 24 Cal. 17; *In re McClaskey*, 2 Okla. 568, 37 Pac. 854; *In re Terrill*, 52 Kan. 29, 34 Pac. 459, 39 Am. St. Rep. 327; *In re Patswald*, 5 Okla. 789, 50 Pac. 139; *Lookabaugh v. Okeene Hdw. Co.*, 25 Okla. 474, 106 Pac. 844. But the action of the sheriff being admittedly a nullity, does it follow that the term, once lawfully convened, lapsed when the judge was unavoidably detained and prevented from reconvening it on the date to which it had been adjourned? It was thought, in the former opinion, that *Lookabaugh v. Okeene Hdw. Co.*, 25 Okla. 474, 106 Pac. 844, was authority for so deciding. Not that the point was directly decided in that case, but that certain statements of the opinion, without a thorough examination of the authorities it cited, led us to that conclusion. In that case the court was in regular session on the 20th of October, and tried the case, and on the next day, before rendering judgment, adjourned the court to November 19th, and on the 19th the sheriff

in the absence of the judge, adjourned the court to November 20th. On the said day the district court of another county in the same district, with another judge presiding, opened and adjourned to the 21st of November, when it reconvened and continued in session from day to day, to December 20th, when it adjourned until December 26th. That pending the said adjournment of the court in the other county on the 21st of December the regular judge opened court in the county where the case had been tried and rendered judgment. The judgment was held to be *coram non judice* and void. Justice Turner for the court on that state of facts says:

"From which we infer that the regular judge was present and convened court on October 27, 1906, and adjourned the same until November 19, 1906, but on that day was neither present to convene nor adjourn court, at which time the sheriff alone undertook to both convene and adjourn until the next day, November 20, 1906, on which day nothing was done or attempted. We are of opinion that, as no day was set by the court on November 19th for reconvening (the action of the sheriff being a nullity [*Railway Co. v. Hand,* 7 Kan. 386]), *said term of court expired by its own limitation with that day or beginning November 20, 1906, at which time Hon. B. F. Burwell, pursuant to proper order, convened a regular term of the district court in the same district in Garfield county.* This is in keeping with the uniform holding in this court." (Italics ours.)

The court then cites and quotes from *In re Dossett,* 2 Okla. 369, 37 Pac. 1066, and other cases, as sustaining the point and proceeds to say:

"It follows that, the court having failed to fix in the order of adjournment a time for reconvening, *the term expired by operation of law by the commencement of the term in Garfield county, etc.*" (Italics ours.)

It will be observed that in that case the court in the first quotation given, that "said term of court expired by its own limitation with that day or beginning November 20, 1906, at which time Hon. B. F. Burwell, pursuant to proper order, convened a regular term of the district court in the same district in Garfield county," might be construed to hold that either of the conditions stated would cause a lapse of the term; but the second quotation given above shows that, nothwithstanding what-

ever may have been in the mind of the court, the decision in that case was finally bottomed on the proposition that *the lapse of the term was caused by the convening of the court in another county in the same district.*

The statement that the court so based that decision is strengthened, if indeed it needs strengthening, by an examination of the authorities cited and relied on. That the convening of court in another county would cause a lapse of the term is made clear by *Irwin v. Irwin,* 2 Okla. 180, 37 Pac. 548, and by the other cases cited; that the action of the sheriff was a nullity is made clear by the cases of *In re Dossett,* 2 Okla. 369, 37 Pac. 1066, and *Railway Co. v. Hand,* 7 Kan. 386, reprint 238, and these last cases were cited on that point. But an examination of those two cases (*In re Dossett* and *Railway Co. v. Hand*) shows that they do not support the contention that the failure of the judge through sickness to reconvene a court, once regularly convened, on the day to which an adjournment had been taken, caused a lapse of the term. In fact, they hold otherwise on that proposition, which shows that the court did not intend to so hold in the Lookabaugh case.

In the case of *In re Dossett, supra,* the third syllabus is as follows:

"After the court has once regularly convened on the day fixed by order of the Supreme Court, it can expire only by adjournment *sine die* or by operation of law, and, unless adjourned *sine die,* will not so expire by operation of law until the first day of the next regular term in the same or another county, and failure of the judge to attend on a distant day to which the said court is adjourned, after having been regularly convened on the date fixed, will not result in the loss or lapse of the term."

And in the body of the opinion it is said:

"We are unable to say that after a session of court is once regularly convened, on the day fixed by law, it can expire in any manner, except by adjournment *sine die* or by operation of law. This is the rule, and is too well settled to admit of controversy. In what manner can a session of court expire by operation of law if not adjourned *sine die?* Will the failure of the judge to attend on a distant day, to which said court is adjourned, lose the term? We think not."

And·in *Railway Co. v. Hand, supra,* decided by the Supreme Court of Kansas, from whence our practice act was taken, the syllabus is as follows:

"A court legally opened for all general purposes continues in session until it adjourns *sine die,* or expires by law, and when an adjournment is made from Saturday until Monday, and from unavoidable cause does not convene until Wednesday, the term not having then expired by law, the court is legally constituted, and its acts are valid and binding."

The facts in the above case show the identical situation found in the case at bar, except that in that case the judge was detained by a severe storm, and in this case by sickness, and inasmuch as·that case is not only in point here, but is instructive in the general principles involved, and has been repeatedly followed in Kansas and other states (*State v. Bohan,* 19 Kan. 28; *State v. Hargis,* 84 Kan. 150, 113 Pac. 401; *State ex rel. v. McBain,* 102 Wis. 431, 78 N. W. 602), we feel justified in quoting liberally from the opinion:

"The facts necessary to understand it are these: The verdict in the case was returned, and judgment entered thereon, on Saturday, the 5th of December, and at the close of the day the court adjourned to Monday, the 7th; but neither on Monday, the 7th, nor on Tuesday, the 8th, was any court held, the district judge being absent. On the 8th of December the motion for ·a new trial was filed with the clerk. On the 9th, the judge having reached Lawrence, the court was opened, and the motion for a new trial was heard and overruled, and time given to make a case; and that case so made raises all the questions but one made in this court. It is insisted by defendant in error that all the proceedings had on Wednesday, the 9th, were *coram non judice,* and present no basis on which this court can act. The record shows that on Monday, the 7th, and on Tuesday, the 8th, the court was adjourned by the sheriff; the order reciting the absence of the judge, being detained by a severe storm. Section 719 of the Civil Code is referred to as sustaining the correctness of the action of the sheriff. This section seems clearly to refer to the beginning of a term, and therefore is not applicable to this case. It was inserted for the sole purpose of saving the term if the judge was detained from the place for any. cause. *Thomas v. Fogarty,* 19 Cal. 644; *People v. Sanchez,* 24 Cal. 17. By the common law a failure to open the court on the first day

of the term wrought a loss of the whole term. *People v. Brad-well*, 2 Cow. [N. Y.] 445. The great inconvenience arising from this principle early led to its corerction by legislation. Accordingly, the English Parliament, in the 3 Geo. IV, 18, made provision that the court might be opened' at some day subsequent to the first day of the term, and that all records and proceedings should be made up as of the first day of the term (2 Bac. Abr. Tit. 'Courts,' p. 714), and our examination has shown that similar laws have been passed in many of the states. This section of our Code having only reference to the beginning of the term, the act of the sheriff in adjourning the court was simply a nullity. Yet we do not think that the term was lost by the adjournment of the court on Saturday till Monday, and its not convening till Wednesday. The term of the court is fixed by law. Having once opened, it continues till the term expires, or an adjournment *sine die* is made. The adjournment from day to day does not suspend its functions. After the court has adjourned for the day, it is a common practice for grand juries to continue their sessions, swear witnesses, pursue their investigations, and find bills; and petit juries frequently remain out all night in deliberation, and make up their verdicts, while the journal shows that the court has adjourned. Each of these juries is part of the court, performing important functions; and the court is always in session in fact, so that it can protect the juries and enforce proper conduct on their part. 'For all general purposes the court is considered as in session from the commencement till the close of its term.' *Barrett v. State,* 1 Wis. 175. In the case just cited the court had adjourned till the next day, and some hours after the adjournment, and before the next day had begun, received a verdict in a criminal case, which was held good on grounds that necessarily cover the case under consideration. At common law the whole period of a term was looked upon as a single day, and everything done at the term was regarded as done of that day. We need not point out what innovations our statutes have made on this doctrine, but we nowhere find it entirely abrogated. The statute still makes judgment liens revert to the first day of the term at which ·the judgment is rendered. There is an evident purpose on the part of the courts to so construe the law, if possible, as will uphold the sessions of courts actually doing business. See *Womack v. Womack,* 17 Tex. 1; *Cook v. Skelton,* 20 Ill. 107 [71 Am. Dec. 250] ; *Jones v. State,* 11 Ind. 357. In this case we find there present the judge, the clerk, and other ministerial officers, at a time and place where it is by law authorized to be held, properly organized at the beginning of the

term, and performing the functions of a court. This must be held to be a court legally constituted, and fully authorized to transact business. 2 Bac. Abr. 6, 16, Tit. 'Courts.' This conclusion makes it necessary to examine the various questions raised in the record."

And in *Schofield v. Horse Springs Cattle Co.* (C. C.) 65 Fed. 433, the syllabus reads:

"A term of court does not lapse or terminate before the limit set by law for its continuance, because of the absence of the judge assigned to hold it, on a day to which its session has been adjourned for convenience in the transaction of business, though no written order adjourning such term is made."

And in *People v. Sullivan,* 115 N. Y. 185, 21 N. E. 1039, the court states the facts and its holding based thereon as follows:

"After a jury was impaneled in a criminal action and the trial begun, the court adjourned until the next day at 10 a. m. In consequence of an extraordinarily severe snowstorm, which blockaded the streets and rendered attendance impossible, no court was held on the adjourned day. On the next day the court convened, the defendant and his counsel appeared, and the trial proceeded without objection and resulted in a conviction. When the district attorney moved for sentence, defendant's counsel moved that the verdict be set aside and a new trial granted; also, in arrest of judgment, upon the ground that there was no legal court on the day the verdict was rendered. *Held,* that the motions were properly overruled; that, the term of the court having been regularly opened, the adjournment was simply a suspension of proceedings, and the nonattendance on the adjourned day did not deprive the court of jurisdiction to proceed as soon as it was possible for it to attend."

The *In re* Dossett case has been quoted from approvingly by the Oklahoma Criminal Court of Appeals in *Ex parte Mingle,* 2 Okla. Cr. 708, 104 Pac. 71, and by this court in *Logan v. Brown,* 20 Okla. 334, 95 Pac. 441, 20 L. R. A. (N. S.) 298, and *Bidwell v. Love,* 22 Okla. 549, 98 Pac. 426, and by the Supreme Court of Wisconsin in *State ex rel. v. McBain,* 102 Wis. 431, 78 N. W. 602.

Therefore, upon a more exhaustive review of the authorities, we conclude that the Lookabaugh case, *supra,* was not decided on the point involved here, and that the cases of *In re Dossett,*

*supra,* and *Railway Co. v. Hand, supra,* ought to be regarded as of controlling influence in the instant case; and this conclusion makes it necessary to consider the other errors assigned and urged.

The next question presented is whether there was any evidence of a waiver upon the part of the carrier of the provisions of the contract relative to giving notice of any damage to the stock within one day after delivery at its destination. The claim of waiver is based on proof of negotiations relative to the claim for damages, and especially on a certain letter to the shippers' attorneys who were trying to collect this, and other claims. This letter relates to the several claims, but the portion referring to the subject of this suit is as follows:

"Frisco.   St. Louis & San Francisco Railroad Company, Freight Claim Department.   J. E. Leith, Freight Claim Agent. St. Louis, March 12, 1908.   In reply please refer to S. 342623. 381408.   Messrs. Cowan, Burney & Goree, Attorneys at Law, Ft. Worth, Texas—Gentlemen: This has reference to certain shipments of cattle made by W. P. James & Bros. for Kansas City. Now in so far as the delay in furnishing cars is concerned, we admit of no liability.   All such orders are received subject to delays.   We made no promise that we would set out the equipment at any specific time to handle these particular shipments, and we filled this order in its regular turn and as soon as we could get cars.   * * *   (5) On the twelve cars moving March 15th, I find that this stuff was sold on the Monday's market of the 18th, which was the market they were running for, and, while there may have been delays on account of wrecks, I find that the unloading slips and account sales are clear, carrying no exceptions whatever; therefore as we made the market the stock was running for, I do not consider there is any liability.   * * * Yours truly, J. E. Leith, M. PLM."

The shipment in this case was made prior to the erection of the state, and therefore the law and rules of decision applicable at that time are controlling in this case.

The condition of this record fails to disclose a case similar to that of *St. L. & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470, which was later followed in *St. L. & S. F. R. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322. Therefore the holding in those cases is not of special importance in this one. The more recent

case, however (*St. L. & S. F. R. Co. v. Ladd,* 33 Okla. 160, 124 Pac. 461), seems to be, upon the precise point involved, completely and directly in point. The opinion in that case was written upon rehearing and received the earnest consideration, and reflects the mature judgment of this court. We therefore quote liberally from that case, as all that is said upon this point there might well be said in the case at bar:

"On the former hearing we were impressed by the reasoning in *Old Dominion S. S. Co. et al. v. C. F. Flanary & Co.,* 111 Va. 816, 69 S. E. 1107, *Atlantic Coast Line R. Co. v. Bryan,* 109 Va. 523, 65 S. F. 30, and cases of that class, which hold that, if waiver by conduct is relied upon, it must appear that the shipper was caused to occupy a more disadvantageous position than he would have occupied but for that conduct, and held that inasmuch as the conduct upon which the waiver was based occurred after the time for giving the notice had expired, and there was nothing to indicate that the carrier intended to waive its rights under the contract, or to show that the shipper was placed in any worse attitude by what was done, there was no waiver as a matter of law. On rehearing, counsel for defendant in error call our attention to authorities which convince us that there is sufficient evidence in the record tending to show an intention on the part of the railway company to waive the notice provisions of the shipping contract as a defense to take the case to the jury on that question. Mr. Elliott, in his work on Railroads (2nd Ed.), sec. 1514, states the general rule as follows: 'A stipulation limiting the liability of the carrier or fixing the time and manner of giving notice or presenting claims may be waived by the carrier impliedly, by conduct, as well as expressly. Thus where a claim is received and acted upon, after the expiration of the time limited, without any objection on that account, the carrier may be deemed to have waived the benefit of the limitation as to the time for presenting it.' A great many authorities are cited in support of the text. Hutchinson on Carriers (3d Ed.), sec. 444, cites *McFall v. Railroad Co.,* 117 Mo. App. 477, 94 S. W. 570, in support of the proposition that, 'where the carrier receives a claim after the time limited for presentment has expired, treats it as pending, and then rejects it on other grounds, he will be deemed to have waived his right to notice within the time limited.' The following cases seem to be to the same effect: *Blackmer & Post Pipe Co. v. M. & O. R. R. et al.,* 137 Mo. App. 479, 119 S. W. 1; *Harned v. Mo. Pac. Ry. Co.,* 51

Mo. App. 482; *M. & M. Transportation Co. v. Fichberg et al.,* 109 Md. 211, 71 Atl. 993, 130 Am. St. Rep. 524; *Vencil v. Quincy, etc., R. R. Co.,* 132 Mo. App. 722, 112 S. W. 1030; *St. L. & S. W. R. R. Co. v. Grayson,* 89 Ark. 154, 115 S. W. 933; *Wallace v. L. S. & M. S. R. R. Co.,* 133 Mich. 633, 95 N. W. 750; *Ingwersen v. St. L. & H. R. R. Co.,* 116 Mo. App. 139, 92 S. W. 357; *Banks v. Penn. R. R. Co.,* 111 Minn. 48, 126 N. W. 410; *Parsons et al. v. Lane,* 97 Minn. 98, 106 N. W. 485, 7 Ann. Cas. 1144; *Hudson & Co. v. N. P. Ry. Co.,* 92 Iowa, 231, 60 N. W. 608, 54 Am. St. Rep. 550. In the latter case it was held that if by his conduct the general freight agent of the carrier induced the shipper to go to the trouble and expense of making out his claim for damage, after the expiration of the time limited, without any objection on that account, and thereby leads him to believe that its presentment would not be insisted upon within the stipulated time, the shipper's failure in that regard cannot be urged as a defense by the carrier. It is true that the plaintiff in the instant case was not induced to file his claim for damages by the conduct of the defendant, but he may very well have been induced by the statements of the claim agent to employ counsel and go to the expense of this litigation, upon the theory that the company would rely as a defense to the action upon the grounds stated in the correspondence which undoubtedly were the ones upon which the claim was rejected. See, also, *Chicago, R. I. & P. Ry. Co. v. Spears,* [31 Okla. 469], 122 Pac. 228."

In the Ladd case, *supra,* as in this, the evidence of waiver of the provision in the contract relative to notice was in the form of certain letters purporting to come from the freight claim agent of the defendant company, and the letters introduced in that case were very similar in terms and subject-matter to the one set out above in this case. Therefore we conclude that there was sufficient evidence, upon the question of the intention of the carrier to waive this provision of the contract, to warrant its submission to the jury, as was done, provided that the letter in this case was properly admitted as evidence. And this brings us to consider the contention that this letter was improperly admitted. One of the shippers at the trial testified that this claim was in the hands of Messrs. Cowan, Burney & Goree, attorneys of Ft. Worth, Texas, who conducted the negotiations looking to a settlement of the claim; that this particular letter was forwarded

to him by those attorneys. He further testified that he had had numerous other claims in process of settlement with this company and had received numerous letters purporting to be signed by J. E. Leith as freight claim agent, and which had been acted upon.

Another witness, Judge McConnell, testified that he had handled other claims for these shippers and had received a letter, which he produced, purporting to be signed by J. E. Leith, freight claim agent, and which offered as settlement $250, which was accepted, and that later the company acted upon such settlement and paid the money. This witness then testified that the letter to Messrs. Cowan, Burney & Goree, relative to this claim and which is set out above, was signed by the same person who signed the other letter which had been acted upon and ratified by the company. On this showing the court permitted the letter in this suit to go to the jury as evidence.

The carrier at the trial made no contention that J. E. Leith was not its claim agent, nor that he was without authority, nor that he had not written or authorized the letters to be written, nor do they assert anything of the kind here. They rest this point upon the technical grounds alone that under this showing the letter was technically incompetent. We do not think so. This letter is written upon the regular stationery of the company which bears the name of the claim agent printed on it. It is positively testified to that the same person who wrote this letter wrote the other one upon the same kind of stationery, and that a settlement made under the other letter was recognized by the company and $250 paid under the agreement it proposed. This other letter referred to, which was acted upon, was concerning a claim of these same shippers, or some of them, and was such a ratification of the authority of J. E. Leith, as claim agent, as to give these same shippers in this case a right to rely upon this authority; and in the absence of any proof or offer of proof upon the part of the company, either as to the genuineness of the letter, or the authority of the claim agent, when such knowledge was solely in their possession, it is thought that there was

sufficient foundation laid for the introduction of the letter, and it is so held.

On the question that the damages are excessive the company has not attempted to analyze the evidence and show wherein it may be so, and from the examination we have made we do not feel justified in saying that the verdict was excessive.

The contention that the clause in the contract limiting the time within which the action could be commenced, to the period of six months after the same had accrued, is mentioned in the brief but does not appear to be urged with any great degree of confidence. This point does not appear to have been decided by this court. If so, such decision is not referred to by either side, and in a hasty examination we have failed to find such. This may be because the point has not been strongly urged upon the court, for it appears that this clause of the contract is clearly in violation of section 1128, Comp. Laws 1909 (section 818, Wilson's Rev. & Ann. St. 1903), which is as follows:

"Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void,"

See *Midland Val. R. Co. v. Ezell*, 29 Okla. 43, 116 Pac. 164.

This leads us to the conclusion that there is no reversible error in this case, and that the judgment of the trial court should be in all things affirmed.

By the Court: It is so ordered.